WESTERN CASUALTY & SURETY CO. v BIRMINGHAM CONTRACTING CO.
et al.

McCURDY v. PHELPS et al.

SAME v. BIRMINGHAM CONTRACTING CO. (WESTERN CASUALTY & SURETY CO. et al., Interveners).

WESTERN CASUALTY & SURETY CO. v. PHELPS.

Nos. 5478, 5929, 6061, 6132.

District Court, E. D. Michigan, S. D.
Sept. 30, 1947.

202

Alexander, Cholette, Buchanan, Perkins & Conklin, of Detroit, Mich., for Western Casualty & Surety Co.

H. T. Ellerby, of Detroit, Mich., for Birmingham Contracting Co., Birmingham Construction Co., Claud A. Phelps and E. Glenn Phelps.

Blackman & Blackman, of Jackson, Mich., for Harry Phelps.

Robert S. Marx, Lawrence I. Levi, Orvill J. Thill, and Frank M. Wiseman, all of Detroit, Mich. (John R. Gehrig, of Cincinnati, Ohio, of counsel), for Charles F. McCurdy.

LEDERLE, District Judge.

Findings of Fact.

1. This series of four cases was instituted by two citizens of other states, namely, Western Casualty & Surety Company, a Kansas corporation, and Charles F. McCurdy, a citizen of Ohio, predicated upon financial transactions arising out of construction contracts performed by certain of the defendants, seeking the appointment of a receiver and other relief for the ultimate purpose of securing payment of plaintiffs' claims in connection with such contracts. The defendants are all citizens of Michigan domiciled within this Division of this District. It is conceded that defendant Birmingham Contracting Company, a Michigan corporation, is insolvent.

The Surety Company's claim against the Contracting Company, in the amount of $25,389.78 (composed of $24,466.25 principal and $923.53 interest), for bond premiums and amounts paid by the Surety Company for the Contracting Company under performance and liability bonds, was reduced to judgment by consent in case 5478.

The contested claim is that of plaintiff McCurdy, for equipment rental, in the principal amount of $12,975, part of which originated with Birmingham Contracting Company, a Michigan corporation, and the balance with the partnership known as Birmingham Construction Company, of which defendants Claud A. Phelps and E. Glenn Phelps, his wife, are partners. Plaintiff McCurdy claimed Claud A. Phelps liable for the aggregate amount on the theory that he was the real recipient of the assets and income of both entities, which were operated and dominated by him as his alter ego.

2. Also by consent, an order was entered in case 6061, whereby a $15,000 income tax refund received by Birmingham Contracting Company was paid into the registry of this court to secure payment of part of plaintiffs' claims, and to await a determination of priority of right to recourse to the fund as between the two plaintiff-creditors, including of necessity, a determination on the validity of the contested McCurdy claim. The controversy between the Surety Company and McCurdy as to priority of access to the Contracting Company's assets centered around McCurdy's claim that he was a creditor of the class the Surety Company's bonds were given to protect, and, as pointed out in American Surety Company of New York v. Sampsell, 327 U.S. 269, 66 S.Ct. 571, 90 L.Ed. 663, equitable principles precluded the Surety Company from sharing the insolvent principal's assets on equal terms with McCurdy. Since trial of the cases, this controversy as to priority has been settled by stipulation of counsel for McCurdy and the Surety Company, and the judgment on this phase is in accord with such stipulation.

Also, by consent, an order was entered in case 6061, permitting Lungerhausen and Canfield, the tax attorneys who had secured the income tax refund, to intervene as claimants to a share of the fund and to be paid $750 therefrom for their services. This was done, and the impounded fund now amounts to $14,250.

In case 6132, a consent order was entered restraining defendant Harry Phelps from disposing of any income tax refund he might receive until he had deposited $5342.-37 into the registry of this court to satisfy that amount as disclosed by him as garnishee of Birmingham Contracting Company on a writ of garnishment after judgment issued upon the Surety Company's behalf in the initial case no. 5478.

3. At the outset, the record in case 5478 should be clarified. The Surety Company instituted this action against Birmingham Contracting Company, Harry Phelps, Arnold W. Lungerhausen and J. Henry Canfield, claiming that the Surety Company was practically the sole creditor of the Contracting Company; that the Contracting Company had become insolvent through unwarranted and improper advancements to its superintendent, Harry Phelps, with part of which he paid income taxes on commissions on anticipated profits, which never materialized; that through the offices of Lungerhausen and Canfield, tax counsel, both the Contracting Company and Harry Phelps had claims for federal income tax refunds pending, upon which refunds were about to be made, the proceeds of which should be applied to reduce the Surety Company's claim. The Surety Company asked injunctive relief to accomplish this purpose. By consent, Lungerhausen and Canfield were dismissed as defendants from the case. Harry Phelps appeared in the case and answered the complaint. The Contracting Company cross-claimed against Harry Phelps for the amount of these advancements, for which it claimed him liable over to it, to which cross-claim no answer was filed. Testimony was introduced at a pre-trial hearing for the entry of default judgment on this cross-claim, and entry of such judgment was withheld pending trial of the entire controversy. All counsel of record were served with formal orders for trial in each of the four cases a month in advance of the trial date, with the request that proposed findings of fact and conclusions of law be submitted by each party in advance of trial. The only parties who complied with this request and participated in the trial as litigants, were plaintiff McCurdy and defendants Claud A. Phelps,

E. Glenn Phelps, Birmingham Construction Company and Birmingham Contracting Company. Accordingly, there appearing to be no dispute on the item covered by this cross-claim, judgment is being entered simultaneously herewith in favor of Birmingham Contracting Company, a Michigan corporation, and against Harry Phelps, in the amount of $15,806.48, plus interest at 5% per annum from August 31, 1944, the date of accrual of the claim.

4. On the dates hereinafter mentioned, plaintiff McCurdy was the owner of one 3/4 cubic yard Lorain backhoe (No. 10556); one 4 inch single action, 4½ horsepower Barnes diaphram pump (No. 7910) with hose to go with it; one 41 to 52 horsepower tractor, with blade, together known as a bulldozer; and one 3/4 ton International pickup truck. Plaintiff McCurdy remained the owner of these items of equipment for the entire period of time covered by this action.

5. Pursuant to a written rental agreement, dated August 11, 1942, between plaintiff McCurdy and defendant Contracting Company, the backhoe and the pump, with requisite hose, were delivered to this defendant by plaintiff McCurdy on or about August 14, 1942. Said rental agreement provided for the use of the backhoe and the pump by said defendant on a so-called Seymour, Indiana, Pilot Training Field project, and provided for the rental thereof by the month by said defendant from said plaintiff at a rental charge of Five Hundred Fifty ($550) Dollars per month for the backhoe and Fifty ($50) Dollars per month for the pump with hose, these rental charges to be due and payable by said defendant to said plaintiff monthly in advance. Said agreement also provided for the payment by said defendant to said plaintiff of any increase in rental charge allowed at any time by the United States Office of Price Administration, and for the assumption by said defendant of full responsibility for the equipment during the rental period with a return to said plaintiff in as good a condition as received, less wear incident to normal use in the hands of a competent operator. Operators were

204

supplied by said defendant at its own expense.

6. At the conclusion of work on the Seymour, Indiana, project, in November of 1942, the backhoe and the pump were moved to Camp Atterbury, Indiana, by the Contracting Company, pursuant to an oral rental agreement with plaintiff McCurdy, embodying the same rental terms as the written agreement of August 11, 1942.

7. On or about September 27, 1942, the pickup truck was delivered by plaintiff McCurdy to said Contracting Company pursuant to an oral agreement between these parties providing for the rental thereof by the month by said defendant from said plaintiff for a monthly charge of One Hundred ($100) Dollars per month. Further, on or about November 25, 1942, the bulldozer (tractor with blade) was delivered by said plaintiff to said defendant pursuant to an oral agreement between these parties providing for the rental thereof by the month by said defendant from said plaintiff for a monthly rental charge of Four Hundred Twenty-five ($425) Dollars per month.

8. Each month, from the respective delivery dates in 1942 of the equipment items, until their return to plaintiff McCurdy in the last week of November, 1944, said plaintiff sent to the Contracting Company bills covering the monthly rental charge for each equipment item, those for the backhoe and the pump being sent at the beginning of each monthly period, in advance, and those for the pickup truck and the bulldozer at the end of each monthly period. Each bill covered a complete month and was for the stated monthly rental charge, except one, dated January 12, 1943, which carried a $300 charge for use of the backhoe and pump on a second shift, and the bill dated January 3, 1944, which was a corrected invoice to cover the increase in the monthy rental charge for the backhoe from May 14, 1943, the monthly bills for the backhoe to January 3, 1944, having been for only $550.

9. The rental charge for each of the items of equipment contained in such regular monthly bills sent by plaintiff McCurdy was in accordance with the monthly charge permitted by the regulations issued by the Administrator of the United States Office of Price Administration, particularly M.P.R. 134, where the lessee had possession but used the equipment for less than 240 hours per month, including an increase to Six Hundred Five ($605) Dollars per month for said backhoe from May 14, 1943. This increase in the monthly backhoe rental charge was in accordance with the parties' rental agreement providing for increased rental upon raising of the maximum by the Office of Price Administration.

10. The primary issue between plaintiff McCurdy and the defendants is whether the items of equipment were rented by defendants, or any of them, continuously, under the oral agreements calling for monthly rental charges from the respective delivery dates until the last week in November of 1944, or whether the oral agreements differed from their prior, written agreement so that rental was to be computed on time the equipment was actually used rather than on a monthly basis for the time it was in defendants' possession. The defendants concede that the oral agreement for rental of the equipment that was entered into at the completion of the first job for which the equipment was rented was to be "on the same terms." This agreement as to terms was never changed.

11. During the period from the respective item delivery dates to November of 1944, the evidence shows performance and other pertinent facts as follows; which defendants did not satisfactorily explain or contradict:

(a) Regular monthly billing by plaintiff McCurdy as set forth in paragraph 8 hereof.

(b) Each of the monthly bills was paid to and including the bill dated April 15, 1943, for the monthly rental charge for the backhoe and pump for the month from April 15, 1943, to May 14, 1943, inclusive; and the bill for the monthly rental charge for the bulldozer for the month from March 25, 1943, to April 24, 1943, inclusive, and for the pickup truck from March 27, 1943, to April 27, 1943. Thereafter, some of the monthly bills were paid and many were not paid. Bills were not rendered and pay-

ments were not made on any hourly or daily rate or for fractions of months. Each payment that was made was by a check with a detachable voucher, so-called, whereon, with one exception, there was indicated the equipment item or items and the complete monthly rental period or periods for which the rental charges were being paid. The noted exception was a check of the partnership, the Birmingham Construction Company, in the amount of $2,500, received by plaintiff on December 11, 1944, after return of the equipment to plaintiff, with the attached voucher bearing only the words "On Account."

(c) In making payment of such of the monthly bills as were paid, defendants did not indicate their payments were on any basis other than the basis on which they were billed, nor was any other communication or matter given therewith that indicated any view of the agreement contrary to the view of plaintiff McCurdy as indicated by his bills regularly sent to defendants each and every month from the respective equipment delivery dates into November of 1944.

(d) Plaintiff McCurdy's monthly bills throughout for the backhoe and the pump carried the respective purchase order numbers 1865 and 1866, assigned by the original Birmingham Contracting Company purchase orders. These same numbers were carried on a voucher attached to a check of the partnership, the Birmingham Construction Company, received August 26, 1944, in payment for backhoe and pump rental.

(e) A letter was sent to plaintiff McCurdy by Birmingham Contracting Company which reads in part: "Will you please advise this office whether the heavy construction equipment *now on rent to us by you* has been registered under L 196." (Italics added.) This letter bears the date "May 28, 1943," which date is during a period defendants here deny they were renting any of plaintiff's equipment and during which they here deny any rental liability.

(f) A letter was sent to plaintiff McCurdy by Birmingham Contracting Company, reading: "Our work has come to the point that we now (no) longer can use your International Bull Dozer. Please advise us what disposition you wish to make of it." This letter is dated "December 24, 1943," which comes at the close of a period during which defendants are here denying they were renting this item of equipment and during which they here deny any rental liability.

(g) Journal voucher 206 from the books and records of Birmingham Contracting Company lists a charge to job costs for the rental of plaintiff's backhoe from May 14, 1943, to August 13, 1943, at $550 per month, for the rental of plaintiff's bulldozer from April 14, 1943, to August 31, 1943, at $425 per month, and for the rental of plaintiff's pump from May 5, 1943, to August 31, 1943, at $50 per month. Defendants are here denying renting these items of equipment during these periods, and here deny any rental liability therefor.

(h) In a report by auditors for Birmingham Contracting Company covering an audit of the corporation's books and records for the fiscal year ended August 31, 1944, there is listed an account payable to "C. F. McCurdy" in the sum of $10,100 and it is so listed without qualification or reservation. Said sum coincides with the principal amount claimed by plaintiff to be due and owing to him for unpaid monthly equipment rental charges through April of 1944. This further coincides with the date May 8, 1944, stated by the Birmingham Construction Company in its 1944 partnership income tax return as the date it was organized, and with other testimony showing rental of the equipment by the partnership starting in May, 1944.

(i) This sum of $10,100 was included and used by Birmingham Contracting Company in its indebtedness figure set forth in its sworn claim for a refund of federal income and excess profits taxes, this refund claim being based on a carry-back of operating losses of said corporation for the fiscal year ended August 31, 1944. A tax refund was granted and paid to the corporation on said claim.

(j) Except for original delivery charges, and charges for return transportation of the equipment when repossessed by plain-

tiff McCurdy in November of 1944, all transportation charges for the moving of the equipment from job to job were paid by defendants.

(k) No reports or payments as to the time the equipment items were in use were tendered to plaintiff by defendants, other than for the first month for time over 240 hours. This was not the only instance, however, in which certain equipment items were used in excess of 240 hours in a month, although plaintiff McCurdy was not advised of such fact. Applicable maximum O.P.A. regulations, according to which rental was to be computed under the parties' agreement, provided for the monthly rates here claimed by plaintiff McCurdy where monthly use was anything less than 240 hours, with additional rental due where monthly use exceeded 240 hours.

(1) On at least two occasions certain items of plaintiff's equipment were subleased to third parties by Birmingham Construction Company, on a fully operated basis.

12. In addition to current monthly invoices, written demands were made by plaintiff upon the Birmingham Contracting Company and the Birmingham Construction Company for past due monthly rental charges, including several demands made during the period in 1943 when rental obligation for the equipment is here denied by defendants. Up to the time the equipment was repossessed by plaintiff McCurdy there were no denials of liability by any defendant in answer to those demands, nor did any defendant object as to the amount of the monthly rental charges regularly billed each month, from the respective equipment delivery dates until November of 1944, nor as to the manner in which the billing was done.

13. The agreements of the parties were for the rental of the stated equipment items from the plaintiff for full monthly periods, the monthly rental charges contracted to be paid to the plaintiff being in the amounts hereinbefore set forth, with an increase in the monthly backhoe rental charge to $605 from May 14, 1943, which agreements remained in full force and effect, and were fully performed by the plaintiff, from the respective delivery dates of the equipment items until the last week in November of 1944. All repairs made and paid for by defendants during the time in question, for which they asked reimbursement at the trial, are covered by the next succeeding finding.

14. During the periods when the equipment was in possession of the defendants, certain minor repairs were made thereto by defendants at their own expense in order to keep the various jobs going. According to the parties' agreements, defendants assumed the risk of these repairs becoming necessary and also assumed the obligation to have them made at their own expense, without any charge or deduction from rental being made against plaintiff McCurdy on account thereof.

15. Some time prior to May 8, 1944, the Birmingham Contracting Company, a copartnership composed of Claud A. Phelps and E. Glenn Phelps, his wife, was organized. These parties were also the sole stockholders of the Birmingham Contracting Company, the corporation, with Claud A. Phelps the party in control of the business affairs of both. Upon its organization, the partnership, with plaintiff McCurdy's knowledge, began operation of the construction business in lieu of the corporation. The corporation made some monthly equipment rental payments thereafter, but for no monthly rental period after the date of the organization of the partnership.

16. The corporation's liability ended with the monthly rental periods to May 15, 1944, for the backhoe and the pump and with April 25 and 27, 1944, respectively, for the bulldozer and the truck, the unpaid monthly equipment rental charges due and owing to plaintiff McCurdy by the Birmingham Contracting Company total the principal sum of $10,100. Interest on each of these unpaid rental charges, computed at 5% per annum from the respective due dates to September 30, 1947, equals the sum of $1,986.41, which sum is likewise due and owing to plaintiff by said corporation.

17. Coincident with termination of the Contracting Company's rental of the re-

spective equipment, the partnership rented the same from plaintiff McCurdy on the same terms and conditions. The unpaid monthly equipment rental charges, from the corporation's respective termination dates specified in the preceding finding to November 15, 1944, for the backhoe and pump, and to November 25 and 27, 1944, respectively, for the bulldozer and the truck, total $5,375. Crediting the partnership with the $2,500 "on account" payment made on December 11, 1944, leaves the principal sum of $2,875 due and owing by the partnership, the Birmingham Construction Company, to plaintiff. Interest on the unpaid monthly rental charges, computed as set forth in the preceding paragraph, after granting an interest credit to the partnership on the "on account" payment, equals $484.91 as of September 30, 1947. This sum is likewise due and owing to plaintiff by said partnership, the Birmingham Construction Company. During the periods covered by this finding plaintiff McCurdy knowingly dealt with the partnership, as lessee, and not with the corporation.

18. Plaintiff McCurdy did not prove that defendant Claud A. Phelps was the recipient of the assets and income of both the partnership and the corporation, nor that either entity was dominated and operated by him as his alter ego.

19. Although plaintiff McCurdy's claim in the principal amount of $2,875 against the partnership is separate and distinct from his claim in the principal amount of $10,100 against the corporation, he has throughout the prosecution of this litigation asserted in good faith that one individual defendant, Claud A. Phelps, was liable on an alter ego theory for the claims originating with both the corporation and the partnership.

20. The various items of equipment were in the possession of the Contracting Company, and subject to its control, from the time of the respective delivery dates specified in findings 5 and 7 until the termination dates specified in finding 16. Thereafter and until termination dates specified in finding 17, the items of equipment were in the possession of the partnership and subject to its control. Although plaintiff learned during the trial that at times the equipment was used more than 240 hours per week, plaintiff McCurdy has waived any claim for unpaid rental other than the monthly maximum provided by M.P.R. 134 where use is anything less than 240 hours, notwithstanding that such regulation and the parties' agreements contemplated additional charges where use exceeded 240 hours per month.

## Conclusions of Law.

1. At the time of the institution of each of these four suits, respectively, this court acquired jurisdiction over each suit as being one between citizens of different states where the matter in controversy exceeded $3000 exclusive of interest and costs, and this jurisdiction continued notwithstanding the fact that in case 5929, plaintiff McCurdy's claim against the partnership was determined to be less than $3000 and separate from his claim of over $3000 against the corporate defendant, where he had asserted in good faith that one individual defendant was liable on an alter ego theory for the claims originating with both the corporation and the partnership. 28 U.S.C.A. § 41(1); Bell v. Preferred Life Assurance Society, 320 U.S. 238, 64 S.Ct. 5, 88 L.Ed. 15; Ford, Bacon & Davis v. Volentine, 5 Cir., 64 F.2d 800.

2. Where, as here, the parties take issue as to the terms and conditions of their oral agreements, acts done and declarations made by the parties while these agreements were in process of fulfillment should be considered by the court in ascertaining what was agreed upon and the parties' rights and obligations thereunder, and generally the practical interpretation thus given to the agreements by the parties should be given effect by the court. 3 Williston on Contracts, Rev.Ed., 1792, Sec. 623; Franklin Fire Ins. Co. v. Chesapeake & O. Ry. Co., 6 Cir., 140 F.2d 898; Potter v. Madison Willow Craft Co., 6 Cir., 73 F.2d 406; Harris v. Morse, D.C.N.Y., 54 F.2d 109; Hague v. DeLong, 282 Mich. 330, 276 N.W. 467. Scotch Mfg. Co. v. Carr, 53 Fla. 480, 43 So. 427.

3. Where, as here, parties defendant make admissions of liability and other statements against interest in relation to agreements at the time of performance thereof and prior to litigation thereon, whether by acts or declarations, and do not during a trial satisfactorily explain or contradict such admissions. and statements, they are very persausive evidence to support the position of the other party suing thereon which is in accord with such admissions and statements. Roche v. Comm'r, 5 Cir., 63 F.2d 623; Carpenter v. Baltimore & O. R. Co., 6 Cir., 109 F.2d 375; Yoder v. Nu-Enamel Corporation, 8 Cir., 145 F.2d 420.

4. Construction machinery rental regulations issued by the Administrator of the Office of Price Administration, in effect at the times in question, contemplated, and the maximum rental schedules covered, the "possession" of the rented articles by the lessee, and were not confined to rental charges based on "actual use" thereof. M. P.R. 134, Secs. 1399.2, 1399.3, 1399.12(3), 8 Fed.Reg. (July, 1943), pp. 9141, 9143.

5. Under the applicable O.P.A. regulation, the maximum rental charges for equipment leased without operator, known as bare rental, did not include charges for operator, mechanic, oiler, fuel, oil, lubricants, repairs or maintenance, except repairs. or maintenance due to normal wear and tear; although the lessee might at his own expense make minor repairs, regardless of the cause of the breakdown, where such repairs were necessary to keep the job going, and the lessee could not charge the cost of such repairs to the lessor or deduct the time lost for making such repairs from the rental period without the lessor's consent. M.P.R. 134, Sec. 1399.14,(a) and (c), 8 Fed. Reg. (July, 1943), p. 9144.

6. In Michigan, partners are jointly liable for debts and obligations of the partnership arising from the leasing of property such as here involved. 1929/C.L. § 9855, Mich.Stat.Ann. § 20.15.

7. Where, as here, a corporation has possession of construction machinery which it has leased on a monthly basis, without any allowance to be made for minor repairs it makes thereto in order to keep the job going, and thereafter a partnership has possession thereof under the same terms and conditions, and no other type of repairs become necessary or are made, each entity is liable to the lessor for the amount of unpaid rental computed on a monthly basis for the period during which it had possession, without any allowance for repairs, where the amounts claimed by the lessor do not exceed the agreed rental nor that allowable by the applicable maximum price regulation.

8. Where, as here, a plaintiff claims an individual defendant personally liable on an alter ego theory for debts of a corporation and partnership of which he is a stockholder and partner, and plaintiff does not prove that such defendant was the real recipient of the assets or income of either entity, nor that either entity was dominated or operated by him as his alter ego, such individual defendant is not personally liable for such debts.

9. It therefore follows that judgments in the following form should be, and are simultaneously entered.

### Judgments.

In accordance with the foregoing findings of fact and conclusions of law, it is hereby ordered and adjudged as follows:

1. In case 5478, the default of Harry Phelps, for failure to answer or defend the cross-claim of Birmingham Contracting Company, a Michigan corporation, is hereby entered, and said corporation shall recover from said Harry Phelps the principal sum of $15,806.48, plus interest at 5% per annum from August 31, 1944, together with its taxable costs against him.

2. In case 5929, the plaintiff, Charles F. McCurdy, shall recover from Claud A. Phelps and E. Glenn Phelps, jointly and as copartners doing business as Birmingham Construction Company, the sum of $3,359.-91, and from Birmingham Contracting Company, a Michigan corporation, the sum of $12,086.41 together with his taxable costs against them.

3. At the time and under the circumstances specified in paragraph one of the stipulation filed September 17, 1947, in case 6061, the Clerk is hereby authorized and directed to disburse the $14,250.00 fund impounded in the registry of this court in the following manner:

(a) Pay to Charles F. McCurdy the amount of the judgment, interest and costs due at time of payment according to the records of case 5929 from the Birmingham Contracting Company, a Michigan corporation, to Charles F. McCurdy, less the sum of $2870 and interest thereon at 5% per annum from January 1, 1944.

(b) Of the then balance of said impounded fund, pay to Charles F. McCurdy 287/2826ths and to Western Casualty and Surety Company the remaining 2539/2826ths.

4. Upon payment of the sums specified in the preceding paragraph, Charles F. McCurdy and Western Casualty and Surety Company shall each file with the Clerk a partial satisfaction and discharge of their respective judgments against Birmingham Contracting Company in cases 5929 and 5478 to the extent of such payments.

5. The consent order entered in case 6132 on February 10, 1947, temporarily restraining defendant, Harry Phelps, from disposing of any income tax refund he might receive until he has deposited $5342.-37 into the registry of this court to satisfy that amount as disclosed by him as garnishee of Birmingham Contracting Company on a writ of garnishment after judgment issued on behalf of plaintiff in case 5478 is hereby made permanent, subject, however, to the right of such defendant to move to dissolve same if such plaintiff does not within a reasonable time take proceedings for the entry of judgment upon such garnishment.

6. Any and all requests for relief made by any party in any of these four cases which are not hereby granted, except such as to which final judgment has heretofore been rendered, are hereby denied and overruled.