## RAUSCHER et al. v. NORTHWEST CITIES GAS CO.

### No. B—1493.

District Court, E. D. Washington, S. D.

Oct. 29, 1941.

W. Stevens Tucker, of Seattle, Wash., for Day Karr, Regional Adm'r, Securities and Exchange Commission.

Lehrer & Marquis, of Walla Walla, Wash., for debtor.

SCHWELLENBACH, District Judge.

This is a reorganization proceeding in which, under the orders of this Court, the debtor remains in possession of the property. It comes before the Court on the petition of Lehrer & Marquis, attorneys for the debtor, for compensation for services rendered to the debtor in the ordinary course of its business operations as distinct from services rendered in the matter of this reorganization. Lehrer & Marquis will hereafter be referred to as "The Attorneys." They petition that they be allowed $150 per month as attorney's fees and that the order entered herein fix that amount not only for services rendered in the past but also for services to be rendered in the future.

The debtor corporation is a gas company operating in a number of cities in Washington, Oregon and Idaho. Its balance sheet as of June 30, 1941, showed assets of $4,070,887.12. That, however, is largely a fictitious figure because, during the first six months of this year, its net operating revenue before all fixed charges was only $16,275.74.

Prior to the institution of this reorganization proceeding, this corporation was a subsidiary of the Lone Star Gas Corporation of Texas. All legal work for the company was done by the Texas counsel for the Lone Star Gas Company. The attorneys here were employed to handle very minor matters and received as compensation only the sum of $25 per month. That sum they have continued to receive and they propose to credit that amount each month against the $150 per month which they are asking.

At the time of the commencement of the proceedings, the order provided that the debtor was authorized and directed "to discharge all duties obligatory upon it and to employ and discharge and fix the compensation of all of its officers, attorneys, managers, superintendents, agents and employees (provided that the compensation of the officers shall not exceed the amounts shown in the debtor's petition unless the Court shall first have specifically approved). * * * Debtor and its officers are hereby authorized from time to time until further orders of this Court, out of the funds heretofore held or hereinafter coming into possession of the debtor to pay all necessary expenses of the debtor in operating, managing and preserving the assets and properties, and conducting the business of the debtor, including among other expenses the wages, salaries and compensation of all officers, attorneys, managers, superintendents, agents, or employees retained by the debtor."

The Lone Star Gas Company was the sole stockholder of the corporation. The creditors consisted of the owners of unregistered bonds and notes the names and addresses of whom are, with the exception of a small number, unknown to the debtor. The bond and note holders are represented by committees which are, in turn, represented by firms of attorneys in San Francisco, California, and Dallas, Texas. The Trustee under the bond and note indentures is represented by a firm of attorneys in Spokane.

The testimony as to services performed by the Attorneys is not disputed. It shows that since they became general counsel for the Corporation they have been required to spend from eight to ten times as much time as was required when they were simply local counsel. They testified that they are now spending and have spent during the period involved from an hour and a half to two hours per day on the work of the corporation. The work is important and, in many instances, it has been complicated. The debtor corporation, as a public utility, must deal with the Public Service Commissions of the States of Oregon, Washington and Idaho. There have been many legal problems involved in those contacts. The tax problems in the three states have been complicated. The Company sells gas ranges and other equipment under conditional sales contracts. The Attorneys have handled the necessary filing and recording of such instruments in the three states. Careful segregation has been made between the work done for the debtor corporation as an operating public utility and the work done for the corporation as a part of the reorganization proceedings. The testimony upon which this petition is based exclusively involves only the first classification.

There was submitted the testimony of Mr. C. W. Halverson, a representative attorney in Yakima, to the effect that it was his opinion that the services rendered by the Attorneys was worth at least $175 per month. The Securities and Exchange Commission has filed a letter in which it concedes that a reasonable compensation for the services rendered would be $125 per month.

Upon the filing of the petition, I signed an order fixing the date for hearing and directing that notice of the hearing be given to the Securities and Exchange Commission at Seattle and also at Washington, D. C., and to the firms of attorneys which had appeared in the action representing the bondholders advisory committees, the stockholder and the trustee for the bond and note holders. None of the parties so served appeared at the hearing or entered any objection except the Securities and Exchange Commission. The S.E.C. appeared and entered the following objections:

"(a) That the notice of hearing is inadequate for the purpose of fixing allowances for services heretofore rendered because service was not had upon creditors under

Section 247 of Chapter X of the Bankruptcy Act [11 U.S.C.A. § 647].

"(b) That the form of notice is insufficient to permit the granting of allowances for services to be rendered in the future, since no provision is made for hearings upon the petitions filed after the services have been rendered; this latter objection is based upon the language of Section 241, which, being expressed in the past tense, is interpreted to mean that allowances can be made only for services upon hearings had after they have been rendered."

■ The position of the S.E.C. makes necessary the answer to the two questions:

First: Is Notice to Creditors Necessary before this Petition May Be Granted?

On this point the S. E. C. relies upon Section 247, Chapter 10 of the Bankruptcy Act, Title 11, U.S.C.A. § 647. At the time of the hearing, the only cases presented to me were In re Wayne Pump Co., D.C., 9 F.Supp. 940, which was presented by the Attorneys and In re Keystone Realty Holding Co., 3 Cir., 117 F.2d 1003, 133 A.L.R. 1378, and Milbank, Tweed & Hope v. McCue, 4 Cir., 111 F.2d 100, both of which were submitted by the S.E.C. I have examined these cases carefully and I find nothing in any of them which is particularly helpful in deciding the problem involved here. It is conceded that, while this proceeding was commenced prior to the adoption of the Chandler Act of June 22, 1938, Title 11, U.S.C.A. § 403 et seq., which superseded the old Section 77B of the Bankruptcy Act, the questions involved herein are of such a nature as to make the Chandler Act practicably applicable and, therefore, it should be used. Central Hanover Bank & Trust Co. v. Philadelphia & Reading Coal & Iron Co., 3 Cir., 99 F.2d 642.

It should first be noted that Chapter 10 of Title 11 U.S.C.A. is divided into sixteen subchapters each attempting to cover a separate and distinct subject. Subchapter 3 is entitled "Jurisdiction And Powers Of Court." 11 U.S.C.A. § 511 et seq. It has a number of subheadings including one entitled "Notices." Title 11 U.S.C.A. § 520. This reads as follows:

"Whenever notice is to be given under this chapter, the court shall designate, if not otherwise specified hereunder, the time within which, *the persons to whom,* and the form and manner in which the notice shall be given." (Emphasis mine.)

Clearly, under this section, the court has the power to decide whether notices to creditors shall be required in any particular instance except those instances where the statute specifically requires the sending of notices to the persons therein named.

Subchapter 9 of the Chandler Act is entitled "Creditors and Stockholders." 11 U.S.C.A. § 596 et seq. Under this is a subheading entitled "Intervention of the parties; Notices Generally," Title 11 U.S.C.A. § 607, which reads: "The judge may for cause shown permit a party in interest to intervene generally or with respect to any specified matter. Except where otherwise provided in this chapter, the judge may from time to time enter orders designating the matters in respect to which, *the persons to whom,* and.the form and manner in which notice shall be given." (Emphasis mine.)

So here we have in the subchapter relating to creditors and stockholders additional power of the court to select the persons to whom notices shall be given.

At this point, it should be noted that these provisions superseded the provision of the old Section 77B, Title 11, U.S.C.A. § 207, sub. c(7), which provided that the court "shall cause reasonable notice of such determination and of all hearings for the consideration of any proposed plan, or of the dismissal of the proceedings, or the liquidation of the estate, or the allowance of fees or expenses, to be given creditors and stockholders by publication or otherwise." The reasons for this change in the law are obvious. After four years' experience with an Act providing for reorganization of corporations, the giving of notice to the holders of unregistered bonds was found to be impracticable. As a consequence, when the 1938 Act was adopted the court was given some leeway in the selection of the persons to whom notice must be given. This case is a good example of such impracticability. Should I require the giving of notice, that notice, insofar as the overwhelming majority of bondholders and noteholders are concerned, would have to be by publication in some paper in this District. The number of bondholders and noteholders who live in this District is undoubtedly negligible. The number who would read such a notice would undoubtedly be so small as to make publication of the notice a futile gesture.

Furthermore, it must be realized that notice such as the S.E.C. now insists upon

was given prior to the hearing in which Judge Webster signed the order authorizing the debtor corporation to employ and to pay attorneys. I have been able to find only one case passing upon the effectiveness of such an order. That was the case decided by the Circuit Court of Appeals in the Second Circuit entitled In re Willow Cafeterias, Inc., 111 F.2d 429, 431. In that case an order in almost the same language as the order of Judge Webster here was signed at the time the debtor was continued in possession. Prior to the proceedings, the corporation had entered into a contract for collective bargaining with a labor union. After the commencement of the proceedings, under the provisions of the order, the debtor in possession entered into a new contract under the terms of which the members of the union were each entitled to a week's vacation with pay. That contract was not submitted to the court, was not approved by the court and, so far as the record shows, the court had no knowledge of it. The reorganization proceedings failed in that instance and the Company went into regular bankruptcy. One Kaftan filed a claim in the amount of $47 for additional compensation for his week's vacation with pay. The opinion points out that there were some two hundred other employees who had filed similar claims and that this was a test case. While the amounts of the other claims are not set out, if Kaftan's claim was typical, there was a total of approximately $9,400 involved. The claim was attacked by the trustee in bankruptcy on the ground that the contract upon which it was based had not been approved by the District Court. Concerning that question, the Court said:

"The important question is whether the debtor had the power to enter into the agreement of May 11, 1938, without the sanction of a court order. * * * Judge Patterson's order of April 20, 1937, not only authorized the debtor to operate the business and to perform existing contracts but also 'in its discretion and subject to the approval of this court, to appoint and employ such managers, agents, employees, servants, * * * as may in its judgment be advisable and necessary in the management, conduct, control or custody of the affairs of the debtor * * *.' It does not seem to us that these provisions required the debtor to apply to the court in order to make the simple and usual contracts of hiring necessary to the authorized conduct of the business and our decision in Re Av-

orn Dress Co., 2 Cir., 78 F.2d 681, 683, we think bears this out. It may be that the court would have had the power to rescind such a contract so far as it remained unperformed, but no such thing was attempted."

Particular note should be taken of the fact that the order in this case did not provide, as did Judge Patterson's order, that the appointment and employment of managers, agents, employees, servants should be "subject to the approval of this court." Under the ruling of the Court of Appeals for the Second Circuit, it may very well be argued that there was no necessity for these petitioners to have secured the approval of the court as to the amount of compensation to be paid to them by the debtor corporation. I do not mean to infer that I am giving my approval to a practice under which attorneys for debtors in reorganization proceedings can enter into agreements with their clients. The inhibition against such practice is based upon the confidential relationship which an attorney bears towards his client and the necessary ethical considerations involved rather than upon any requirement of the Bankruptcy Act.

The position of the S.E.C. is based exclusively upon Section 247 of Chapter 10 of the Bankruptcy Act, Title 11 U.S.C.A. § 647, which reads as follows: "Hearing of applications—The judge shall fix a time of hearing for the consideration of applications for allowances, of which hearing notice shall be given to the applicants, the trustee, the debtor, the creditors, stockholders, indenture trustees, the Securities and Exchange Commission, and such other persons as the judge may designate, except that, in the case of allowances for services and reimbursement in a superseded bankruptcy proceeding, notice need be given only to the applicants, the debtor, the trustee, and the unsecured creditors, and may be given to such other classes of creditors or other persons as the judge may designate. In the case of the dismissal of a proceeding under this chapter and the entry of an order therein directing that bankruptcy be proceeded with, notice of the hearing to consider allowances need not be given to stockholders."

This particular section is a part of subchapter 13 of chapter 10 which is entitled "Compensation and Allowances." An examination of that subchapter reveals that every section therein contained deals ex-

clusively with the work of reorganization. The first section in the subchapter is entitled "Petitioning creditors; court officers; attorneys therefor," Title 11 U.S.C.A. § 641, which reads as follows:

"The judge may allow reimbursement for proper costs and expenses incurred by the petitioning *creditors and reasonable compensation for services rendered and reimbursement for proper costs and expenses incurred in a proceeding under this chapter*—

"(1) by a referee;

"(2) by a special master;

"(3) by the trustee and other officers, and the attorneys for any of them;

"(4) by the attorney for the debtor; and

"(5) by the attorney for the petitioning creditors.

"Such compensation of referees and trustees shall not be governed by sections 68 and 76 of this title." (Emphasis mine.)

Similarly, every section in the subchapter refers to the work of reorganization and not to the work performed in the operation of the business by the debtor in possession. If the Attorneys were asking for compensation for their services upon the plan of reorganization, clearly the notice insisted upon by the S.E.C. would be required. I am convinced, however, that for work of the nature involved here the provisions as to notice as found in Title 11 U.S.C.A. §§ 520 and 607 control. The mere fact that these petitioners are attorneys and that their services are of a legal nature does not, in itself, require that in seeking compensation they come under the provisions of subchapter 13.

I am going to accept the suggestion of the Securities and Exchange Commission that the monthly compensation be fixed at $125 with a deduction for the $25 received each month. I do this, even though I am satisfied that the Attorneys have earned more, because I was convinced from the testimony that much of the time which the Attorneys have spent in consultation with the officers of the debtor corporation has been consumed in the consideration of questions of business policy rather than with purely legal questions. For such time, these petitioners are not entitled to receive compensation. It is one of the pernicious practices of clients to lean upon their lawyers in making decisions on questions of business policy. Usually the clients dislike paying for such services. Under ordinary circumstances they should be compelled to pay for such services. However, a corporation in reorganization cannot be compelled to pay for such services and lawyers should learn to resist the importuning of clients in reorganization who simply want to take their time acquiring non-legal advice.

Second: Can Allowances Be Made for Future Services?

The discussion of the problems involved under the first question fully answers this question. Since Section 241, Title 11 U.S.C.A. § 641, is in the subchapter referring exclusively to services rendered in a reorganization proceeding, I see nothing in it which will prevent the entry of an order now making a continuing allowance. I will sign an order in conformity with this opinion.