**Matter of CAPITAL SERVICE, Inc., etc., Debtor.**

**No. 58071.**

United States District Court
S. D. California, Central Division.

Dec. 22, 1955.

Craig, Weller & Laugharn, Los Angeles, Cal., C. E. H. McDonnell, Los Angeles, Cal., for trustee.

Pauline Nightingale, Leon H. Berger, Edward M. Belasco, Los Angeles, Cal., for Division of Labor Law Enforcement.

JAMES M. CARTER, District Judge.

This is a review of an order of a Referee in Bankruptcy, and concerns the question as to whether vacation pay is part of an employee's wage, and whether employees may have a claim allowed as an administration expense for such pay, earned during the period in which a debtor in possession operated a business under an order of the bankruptcy court.

## The Facts

A Petition for Arrangement by Capital Service, Inc., was filed September 14, 1953, under Chap. XI, Sec. 322, 11 U.S. C.A. § 722. A plan of Arrangement, also filed September 14, 1953, alleged the character of the business a "bakery business." On the same day the Referee made a written order that "Debtor shall continue in possession of its property. * * * Debtor shall have power subject to control of the court to operate the business * * * including ' * * * the power and right to use cash and bank accounts of the debtor for the purpose of operation of the business of the debtor * * * ".

The President of the corporation was appointed General Manager of the debtor in possession on September 16, 1953, and from September 14, 1953, to February 1, 1954, the business was operated by the debtor in possession. On February 1, 1954, the corporation was adjudicated a bankrupt and a trustee appointed.

Forty six individuals hereafter called the *"claimants"* worked during the period from September 14, 1953, to February 1, 1954, in the business conducted by the debtor in possession. All were former employees of the bankrupt corporation. They were paid their wages (without vacation pay) through the bankruptcy court, for this period and thus such wages paid were treated as administrative expense. No question is involved as to employment or events after February 1, 1954. Claim was made for wages and pro rata vacation pay as a prior claim *for the three months prior* to the fiing of the Chap. XI proceedings (June 14, 1953, to September 14, 1953), as will be seen by the claim hereafter referred to, but this portion of the controversy has been disposed of and is not here for consideration.

The case thus differs from those adjudicated cases where claim is made for *priority* for vacation pay earned in periods before the commencement of a bankruptcy proceeding, and where the question was whether it became *due* during the three month period before the

commencement of bankruptcy proceedings; In re Kinney Aluminum Co., D.C. Calif.1948, 78 F.Supp. 565, 569, allowing the claims on the basis that they accrued or became *due* during the three month period; In re Men's Clothing Code Authority, D.C.N.Y.1937, 71 F. Supp. 469, and Division of Labor Law Enforcement, State of California v. Sampsell, 9 Cir., 1949, 172 F.2d 400, 401–402, holding vacation wages to be entitled to priority, must be *earned* within the three month period; Kavanas v. Mead, 4 Cir., 1948, 171 F.2d 195, 6 A.L.R.2d 645, holding claims, terminating before the beginning of the three month period but deferred as to payment were not entitled to priority; and this case differs from cases involving priority of severance pay accruing before the commencement of the bankruptcy proceedings, McCloskey v. Division of Labor Law, etc., 9 Cir., 1952, 200 F.2d 402, affirming In re Elliott Wholesale Grocery Co., D.C. S.D.Cal.1951, 98 F.Supp. 1017.

Proof of unsecured debt claiming priority as administrative costs was filed June 5, 1954, in behalf of the 46 claimants by the Division of Labor Law Enforcement, of the Department of Industrial Relations of the State of California, as assignee. The claim sought wages for vacation pay earned from May 1, 1953, to February 1, 1954, the date of adjudication, totaling $5,324.20. Objection by the Trustee was filed November 13, 1954. It points out September 14, 1953, as the commencement of the Chap. XI proceeding and adjudication and appointment of a Trustee on February 1, 1954. The objection was "That only that portion of the vacation pay earned after June 14, 1953" (which was three months before the Chap. XI petition was filed) "should be accorded a prior position in the within proceeding and that any earned prior to June 14, 1953, should be allowed as a general unsecured claim only, and *placing his objection on that ground,* objects to each, every and all the *claimants* (sic) individually, unless and until an appropriate itemization is made, allocating the vacation pay claimed to the periods before and after June 14, 1953, respectively."

An amended claim was filed for the same 46 claimants on December 21, 1954, fixing the period for vacation pay earned as September 14, 1953, to February 1, 1954 and reducing the claims to $2,508.-36. This amended claim was thus for the period beginning with the order authorizing the debtor to operate the business and ending with adjudication and the appointment of the Trustee on February 1, 1954. The claims for vacation pay earned in the three months prior to September 14, 1953, were ordered paid by the Trustee and are not here for consideration. (Partial order on Labor claims Jan. 1955).

On January 21, 1955, a stipulation of facts was filed providing:

"1. That the individuals listed in Exhibit A, attached to the Objections * * * worked at the rates set forth in said exhibit and for the length of time shown in said exhibit." Exhibit A listed the claimants and their claims from May 1955, and is identical to the Exhibit attached to the original claim.

"2. That the amounts of wages due for vacation pay in * * * Ex. A are correctly calculated.[1]

"3. That between the bankrupt corporation and its employees as listed in Exhibit A, and its other employees generally, neither prior to nor after the commencement of these proceedings was there any written union contract covering wages, vacations or conditions of employment."

"4. That each individual listed in the Exhibit 'A', described hereinbefore, was employed under an in-

---

1. This was obviously an error. The purpose of the stipulation was to present the issues raised by the Amended claim then on file. The Amended claim had an Ex. A—listing the 46 claimants, their daily rates of pay and a final column showing a computation of 4½ times the daily rate. Four and one-half months elapsed between September 14, 1953 and February 1, 1954.

dividual oral contract of employment in which he was promised wages and vacations with pay on the following scale:

"A. A vacation of one week with pay after one year's continuous service.

"B. A vacation of two weeks with pay after two or more years of continuous service.

"C. A prorata vacation at the rate of one day per month if an employee were laid off or discharged without cause."

"5. That there was no interruption of the employment of the said individuals due to the filing of the petition under Chapter XI of the Bankruptcy Act by the bankrupt corporation, and no notice was given to any of the bankrupt corporation's employees that a change was made or contemplated in their employment contracts."

"6. That the stipulated facts herein, and the evidence offered at a hearing on December 16, 1954, on the objections of the Trustee to the claim of the Division of Labor Law Enforcement, No. 129, are deemed to be evidence offered and facts stipulated to, and the said objections may be applied to the amended claim of the Division of Labor Law Enforcement insofar as it asserts a claim for administrative vacation pay." No other objections were ever filed.

We note in passing that the objection, if applied to the amended claim, was by its language no objection at all but instead a concession that the amended claim was good.[2]

On March 15, 1955, the Referee filed a 15 page opinion and on April 6, 1955, signed and filed findings of fact, conclusions of law and an order disallowing the amended claim in full.

The Referee stated in his opinion that "The amended claim is based on alleged wages as vacation pay earned since the commencement of the bankruptcy on September 14, 1953. It is based on wages accumulated prior to bankruptcy and paid, and wages accumulated during the administration of the debtor in possession and paid, *so as to complete one or two years, or more, of service with an alleged attendant vacation pay.*"

We did not think this correct and so had counsel file herein an additional stipulation clarifying the ambiguities in the earlier stipulation and specifying that only the vacation pay allegedly earned between September 14, 1953 and February 1, 1954, was in issue. The new stipulation follows:

"The stipulation of facts heretofore filed on January 21, 1955 in the above entitled matter is supplemented as follows:

"(1) In Exhibit A, attached to the 'Amended Administration Cost Claim' filed December 21, 1954, the figures under the column entitled 'Monthly Vacation Rate Scale,' represent the amount of vacation pay accrued monthly, i. e. one day's pay and the figures under the column 'Wages Due' is a projection on a four and one-half month basis for the period from September 14, 1953 to February 1, 1954.

"(2) Paragraphs 1 to 4 inclusive of the stipulation filed January 21, 1955, refer to exhibit A, 'attached to the objections to claim of the Division of Labor Law Enforcement No. 129, filed herein by the trustee * * *'. The said paragraphs 1 to 4 of the stipulation shall apply and refer with equal force and effect to the Exhibit A, attached to the amended claim."

"(3) None of the vacation pay claimed in the amended claim ac-

---

**2.** In fact it also conceded a prior position to vacation pay wages of the original claim earned between June 14, 1953 and September 14, 1953, the three month period prior to commencement of the bankruptcy proceeding. But this part of the claim was eliminated by the Amended claim and is not before us.

crued prior to September 14, 1953 and the question presented to the Referee heretofore and to the District court on petition for review involves Sec. 4C of the stipulation filed January 21, 1955. No claim is made based on Sec. 4A or 4B of the said stipulation."

Under Sec. 4(c) of the first stipulation referring to lay-off or discharge without cause, we hold that the filing of the arrangement proceedings constituted a discharge of employees and of the claimants herein. Sec. 2921, Labor Code of California, infra; McCloskey v. Division of Labor Law, etc., supra, assignment for benefit of creditors, a discharge; In re Public Ledger, 3 Cir., 1947, 161 F.2d 762, at pages 770 & 773.

The stipulation, the Referee's opinion and the findings do not tell us what went on when the debtor in possession took over under the court order. Each says only "That there was no interruption of the employment of said individuals due to the filing of the petition under Chap. XI of the Bankruptcy Act by the bankrupt corporation, and no notice was given to any of the bankrupt corporations' employees when a change was made or contemplated in their employment contracts." ꞌ

The Referee then concludes: "These vacation pay contracts were of course executory contracts within the meaning of sections 70(b), 313(1) and 357(2) of the Bankruptcy Act [11 U.S.C.A. §§ 110, sub. b, 713(1), 757(2)]." We cannot follow this conclusion.

We think the case is controlled by In re Wil-Low Cafeterias Inc., 2 Cir., 1940, 111 F.2d 429, and In re Capital Foundry Corp., D.C.N.Y.1945, 61 F.Supp. 332, allowing pro rata vacation pay to employees, employed by a court officer, as administration expense where the new employment was patterned on the prior employment before the commencement of bankruptcy proceedings.

■  We think California law controls the nature of the contract created by the oral agreement. In re Kinney Aluminum Co., supra; Erie Railroad Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. Federal bankruptcy law controls as to the right, if any, to priority. In re Kinney Aluminum Co., supra, American Surety Co. of New York v. Sampsell, 1946, 327 U.S. 269, 66 S.Ct. 571, 90 L.Ed. 663, or here, on the right, if any, to consider the claim as administration costs.

California law makes a distinction between employment contracts for an unspecified term and employment contracts for a specified term. Sec. 2922, Labor Code. "* * * An employment, having no specified term, may be terminated at the will of either party on notice to the other. Employment for a specified term means an employment for a period greater than one month." An employer may terminate employment for a specified term for willful breach of duty, habitual neglect of duty or continual incapacity, Sec. 2924, Labor Code. "Every employment in which the power of the employee is not coupled with an interest in its subject is terminated by notice to the employee of either of the following * * * (b) The legal incapacity of the employer to contract." Sec. 2921, Labor Code. The only obligation of the employer at the time of the termination of a contract for an unspecified term is to pay the employee compensation for all services rendered up to the time of dismissal, Labor Code, § 2926, and § 201.

■■  Thus, there was nothing to become executory about these oral employment contracts in our case. There was a change of ownership when the debtor went into possession under the court order. The employees worked previously for the corporation,—thereafter they worked for the debtor in possession. The contracts had no specified term and we conclude they terminated when the Chap. XI proceeding was filed, and the debtor went into possession. Executory contracts are contracts "which call for performance in futuro," In re San Francisco Bay Exposition, D.C.Cal.1943, 50 F.Supp.

344, 346–347.[3] When the oral contracts of employment terminated on the appointment of the debtor in possession there was nothing executory left to plague or burden the debtor or trustee. An obligation for wages then due may have existed as a claim in bankruptcy. That claim has been discharged.

### The claimants were employed by the debtor in possession.

The Referee in that latter part of his opinion takes the position that the employment of the claimants by the corporation terminated on September 14, 1953. He states, "When the debtor became debtor in possession a new entity was created," and "when an arrangement proceeding is commenced and the debtor is continued in possession of its assets, the title to the property passes from the debtor to debtor in possession." * * * "When the debtor in possession * * * operated the business and hired these employees, it was a new employment by a new entity." Though undoubtedly true, there was no finding to this effect.

The findings state "There was no *interruption* of the employment * * * and no notice was given to any of the said employees at that time that a change was made or contemplated in their employment contracts."

"No interruption of the employment" might have two meanings, (1) that the same employment contract continued from a time before September 14, 1953, to some time after. The Referee disclaims this meaning by his opinion above quoted; or (2) that there was no physical interruption or gap in the work or work days of the employees, i. e. that they worked at certain tasks on the last work day before Monday, September 14, 1953 (probably Friday, September 11th or Saturday, September 12th) and at the same tasks on Monday, September 14, 1953. The Referee by his opinion apparently adopts the latter meaning.

How then, were they rehired? The findings show no notice of any kind was given them. The only inferences available is that they were hired on (a) the basis of the previous terms and conditions of employment, or (b) on a quantum meruit basis. We would reject the latter as being unworkable and leaving open for settlement or possible trial the reasonable value of each employee's service. Probably the best evidence of the reasonable value of the employees' services, in such a situation, would be what they had theretofore been earning. Findings should be made on the issue.

There was available to the referee from the inception of the proceedings on September 14, 1953, facts and notice that the corporation had an accrued liability for vacation pay, i. e. that the employees had been earning vacation pay. The petition under Chap. XI, filed September 14, 1953, had attached a statement of assets and liabilities specifically set up as liabilities,

"Wages Payable          $4,971.58
"Reserves vacation pay,
   etc.                   6,097.54"

The summary of debts and assets filed October 2, 1953, two weeks after the debtor went into possession shows "accrued vacation pay (6/15/53 thru 9/15/53)" listing 55 employees, including the 46 claimants herein[4] and individual amounts then due. Thus from September 14, 1953 (and certainly from October 2, 1953) the Referee had notice of the conditions of prior employment, i. e. that the old employees had been earning prorata vacation pay prior to September 14, 1953. Of course the debtor in possession, and its President, who was appointed general Manager on September 16, 1953, knew of the terms of the prior oral wage agreements. The same information was available to the Trustee from his appointment on February 1, 1954.

3. See Judge Goodman's discussion therein re executory contracts.
4. One is listed as Ermal E. Carly in the original claim and objection, as Ermal *Curly* in the amended claim and as Ermal *Carey* in the summary of debts.

" 'A vacation with pay is in effect additional wages' ", In re Public Ledger, 3 Cir., 1947, 161 F.2d 762, 767, quoting from In re Wil-Low Cafeterias Inc., 2 Cir., 1940, 111 F.2d 429, 432. See In re Kinney Aluminum Co., supra, Division of Labor Law Enforcement, State of California v. Sampsell, supra, and Kavanas v. Mead, supra, which concern *priority* of vacation pay but proceed on the premises that it is part of the wage; McLaughlin v. Union Switch & Signal Co., 3 Cir., 1948, 166 F.2d 46, and Siaskiewicz v. General Electric Co., 2 Cir., 1948, 166 F.2d 463, 465–466, holding that the Selective Training and Service Act of 1940 protects vacation rights if earned by employee, before induction.

The old rate of pay included as an integral part, the earning of one day's pay per month to be used for vacation purposes. Thus, it could be found that impliedly the debtor in possession, in allowing the claimants to work for him, approved the old rate of pay as he did the old hours of employment and other conditions previously existing.

We think the facts show without dispute that the debtor in possession actually employed these employees and claimants herein to work for him, though this was done impliedly and not by any meeting or discussion between the debtor and the employees. However, there is no finding to this effect. His conduct in continuing to accept their labor after September 14, 1953, could lead to a finding that he in substance told them, "continue to work for me at your old rate of pay." The Referee seemed to have the same view at the hearing of December 16, 1954, but proceeded on the erroneous premise that vacation pay is not part of the wage earned.[5]

In re Schenectady Ry. Co., D.C.N.Y. 1950, 93 F.Supp. 67, involved a labor contract providing for pensions for retired workers, and its holding is not pertinent but the language of the court describing the use of a previous contract as a yardstick in determining the compensation under employment is illuminating and descriptive of our case. The court said, 93 F.Supp. at page 69, "* * * It is readily inferred that the Trustee had neither the time nor the opportunity to confer with each employee as to the terms of his employment. It may be further inferred that the present employees received compensation for services performed in accordance with the terms of the contract. In other words, the contract was used as a yardstick or measure of obligations. *To knowingly conform to the terms of a contract in a reorganization proceeding is quite different from its assumption.* In re Public Ledger, 3 Cir., 161 F.2d 762; In re Capital Foundry Corp., D.C., 61 F.Supp. 332. * * *" [Emphasis supplied.]

The intention of the debtor in possession in rehiring and the Referee in making the order authorizing the debtor in possession to operate the business could be found to be an intention that the rehiring was at the old terms and conditions of employment.

Kavanas v. Mead, supra, involved priority of claims prior to bankruptcy and is not in point here. Though not a matter appealed from, the case recites [171 F.2d 197] that the District court approved the action of the receiver who "paid to the men employed by him a proportionate part of the vacation pay for this year based upon the time that they were employed by him * * * from October 23, 1943, to June 27, 1944 * * *," and that "Miners who earned wages from July 9 to October 9, 1943" (the date of bankruptcy) "were held to be entitled to priority for vacation pay

---

5. "Mr. Belasco (Attorney for Div. of Labor): He (the debtor in possession) hasn't made any agreements.

"The Referee: Then they (the claimants) will have to take their pay for whatever work they do.

"Mr. Belasco: This is pay.

"The Referee: Vacation pay is not pay. * * *

"The Referee: * * * the matter of vacation pay was never brought to the attention of the court. They (the claimants) were allowed to remain there and be paid for that work but not for vacations."

for the three months' period, that is, one-fourth of the vacation pay for the year * * *." The appellate court said, 171 F.2d at page 198:

"* * * The decision of the District Judge as to the balance of the claims gives the claimants no cause for complaint. The miners who performed no services during the three month period preceding bankruptcy were clearly not entitled to priority in respect to vacation pay based on that period, and those who worked during that period were fully compensated in this respect by the allowance of priority to vacation pay for one-fourth of a year. Affirmed."

Implied assumption not involved.

In our view of the case, we do not reach the question of the implied assumption or ratification of an executory contract by an officer of a bankruptcy court, i. e. assumption implied from conduct, as contrasted with a direct and express assumption. Thus we do not need to discuss the conflict referred to by the Referee between In re Public Ledger, 3 Cir., 1947, 161 F.2d 762, where an executory contract was held to have been impliedly assumed and Stanolind Oil & Gas Co. v. Logan, 5 Cir., 1937, 92 F.2d 28; In re Northern Indiana Oil Co., D.C.Ind. 1946, 65 F.Supp. 167, affirmed on appeal to the 7th Circuit in 180 F.2d 669; Johnson v. Kurn, 8 Cir., 1938, 95 F.2d 629; Collier on Bankruptcy, 14th Ed., Vol. 4, p. 1233, to the contrary.

But even if we assume that these individual labor contracts between each claimant and the bankrupt corporation were executory contracts (an untenable position as shown above), still the result is the same.

Sec. 70, sub. b of the Bankruptcy Act, 11 U.S.C.A. § 110, sub. b, provides, "within sixty days after the adjudication, the trustee shall assume or reject any executory contract * * *. Any such contract or lease not assumed or rejected within such time * * * shall be deemed to be rejected." Sec. 302 of the Bankruptcy Act, 11 U.S.C.A. § 702, provides that Sec. 70, sub. b shall apply to proceedings under Chap. XI, except when inconsistent therewith. By Sec. 343 of the Act, 11 U.S.C.A. § 743, a debtor in possession has the status of a trustee in the operation and conduct of a business.

The Referee has found that these executory contracts were not expressly or impliedly assumed or ratified. Therefore under Sec. 70, sub. b of the Act, 11 U.S.C.A. § 110, sub. b they were rejected. Thus they terminated when the debtor in possession took over on September 14, 1953. If they terminated, we would assume they terminated "in toto" and not that portions of the oral contracts terminated, and other portions remained. Thus having terminated it becomes apparent, as we have discussed heretofore, that the debtor in possession could have been found, in substance, to have rehired the employees at the old rates of pay and under the old terms and conditions of employment. Part of the pay schedule was vacation pay of one day's pay per month worked.

But the Referee viewed the matter as if the *part* of the oral employment contract involving vacation pay terminated under Sec. 70, sub. b, 11 U.S.C.A. § 110, sub. b and the *balance* of the oral contract survived. We think this untenable. As stated in Re Schenectady Ry. Co., supra, 93 F.Supp. at p. 70.

"* * * The hourly rate of pay, the provision for vacation pay, seniority rights, the settlement of grievances, are all a part of the benefits received by the worker. They are a part of the reward for his efforts; a part of his wage, In re Wil-Low Cafeterias, 2 Cir., 111 F.2d 429; In re Capital Foundry, supra, and this Court is not justified in attempting to separate or isolate the elements which go to make up the total benefits. They are all in one package. * * *"

██ To summarize (a) if the contracts were not executory, they terminated when the new legal entity, the debtor in possession, a new employer,

came in on September 14, 1953. Since they terminated, but the employees continued to work, there was a rehiring (1) impliedly accepting the old terms and conditions of employment, with vacation pay of one day a month for time (4½ months) worked for the debtor in possession or (2) on quantum meruit; (b) if the contracts were executory, then they were not expressly assumed or ratified, and so terminated under the Act on September 14, 1953. The same result follows.[6]

The effect of the Referee's order that debtor operate the business.

The Referee in his opinion, states the trustee was not expressly empowered to hire employees and that their wages were not fixed by an order. "The fact that specific authority has not been conferred does not necessarily mean that a contract is not within the scope of the general authority conferred, but that scope is strictly construed." Collier on Bankruptcy, 14th Ed., Vol. 8, Sec. 635, p. 821 at 829, citing In re Wil-Low Cafeterias Inc., supra. But see City of New York v. Rassner, 2 Cir., 1942, 127 F.2d 703, concerning payment of taxes by debtor in possession.

The question is one of interpreting the scope of the Referee's order. The Referee authorized the debtor be put in possession to operate a bakery business and to spend the corporation's money. Here the authority to operate the business, ran to a corporation, the debtor in possession. Its president was appointed General Manager. We can assume that no individual, no matter how well qualified, could do all the work in operating a bakery of the size shown by the file in this case. Obviously the debtor corporation must act through agents. Impliedly the Referee authorized the debtor in possession to hire employees to carry on the business. The manager of the debtor in possession did employ them and by not discussing the matter with them or agreeing to different terms, either (1) impliedly approved the old rates of pay of which the vacation pay was an integral part, or (2) hired them on a quantum meruit basis.

■ The Referee took the position that the claims should be disallowed because the trustee did not report them and the Referee made no order for their payment. Although in Re Wil-Low Cafeterias, supra, the order empowering the debtor, expressly authorized the hiring of employees, subject to the approval of the court, there was no approval and the contract was not presented to the court. The case is squarely in point on this issue. 111 F.2d at page 431. So also In re Capital Foundry Corporation, D.C. N.Y.1945, 61 F.Supp. 332. See Rauscher v. Northwest Cities Gas Co., D.C.Wash. 1941, 41 F.Supp. 566 (hiring of attorneys by debtor to assist in conducting the business).

"The laborer is worthy of his hire" and as much so, when working for an officer of a court, as when working for a private corporation. We do not need to rest this decision on estoppel. It need only rest on the duty of the debtor in possession and a subsequent trustee, both court officers, to pay debts, or to secure authority to pay debts, i. e. administrative expenses incurred under a Referee's order; and the duty of the Referee to approve or authorize payments of administrative expense reasonably incurred because of his prior order.

■ The costs of labor performed subsequent to the filing of a petition in bankruptcy or a Chap. XI proceeding is a necessary expense in the preservation of the bankrupt estate and is entitled to priority as an actual administration cost. Sec. 64, sub. a(1) of the Act, 11 U.S. C.A. § 104, sub. a(1); Collier on Bankruptcy, 14th Ed., Vol. 3, Sec. 64, 105

---

6. If they were impliedly assumed or ratified we obtain the same result through viewing the employment as continuous, and as continuing through to February 1, 1954, with one day's vacation pay earned for each of the 4½ months. This would seem to be the result of applying In re Public Ledger, supra, but is a result we do not reach.

p. 2069 at 2074; Sec. 64.202, p. 2085 at 2087; In re Wil-Low Cafeterias, Inc., supra; In re Hughes, D.C.N.J.1909, 170 F. 809, affirmed sub nom.; The Falcon (In re Hughes, 3 Cir., 1910, 177 F. 916.

The order of the Referee dated April 6, 1955, disallowing the amended claim is reversed and the cause remanded for new findings of fact, conclusions of law and an order not inconsistent with this opinion.