**In re HERMAN HASSINGER, INC. a/k/a Herman Hassinger Woodworking Co. a/k/a Action Lighting Products, Debtor.**

**Bankruptcy No. 74–677G.**

United States Bankruptcy Court, E.D. Pennsylvania.

Aug. 1, 1986.

K. Mitchell Posner, Mesirov, Gelman, Jaffe, Cramer & Jamieson, Philadelphia, Pa., for objector/trustee, Fred Zimmerman.

Fred Zimmerman, Pennsauken, N.J., trustee.

Robert Szwajkos, Rubin, Quinn & Moss, Philadelphia, Pa., for debtor, Herman Hassinger.

Lynne Gerber-Saionz, Philadelphia, Pa., for creditors.

### OPINION

EMIL F. GOLDHABER, Chief Judge:

The predominant question is whether under the Bankruptcy Act of 1898, wages earned by a debtor's employees after confirmation of a chapter XI plan but prior to

conversion to a liquidation proceeding have priority over prepetition wages. For the reasons expressed below, we conclude that the wages do not have priority, but rather share ratably with prepetition wages.

We summarize the facts of this case as follows:[1] The debtor filed a petition for the arrangement of its debts under chapter XI of the Bankruptcy Act of 1898 ("the 1898 Act"). A chapter XI plan was proposed and confirmed, and for a time following confirmation, the debtor's employees duly executed their duties. Numerous employees instructed the debtor to deduct from their wages, union dues, support payments or credit union payments, and the debtor made such deductions. Some time later the debtor was unable to fulfill the terms of the plan and the debtor was adjudicated a bankrupt. The case was thereby converted to a liquidation proceeding and a trustee was appointed.

The employees filed proofs of claim[2] for unpaid wages and they also claimed entitlement to portions of their unpaid wages which they had formerly assigned as union dues, credit union payments and support payments. On the proofs of claim the claimants asserted that they were entitled to priority status over general, unsecured creditors. The trustee filed objections to many of these claims, challenging the claimants alleged status as administrative claimants. The trustee also assailed the employees' right to claim union dues, credit union payments and support payments which the employees authorized but which were never made by the debtor.

The former employees claim priority under § 64 of the 1898 Act on the basis that the wages were earned after the filing of the petition. § 64 of the 1898 Act, former 11 U.S.C. § 104 (1976) (debts having priority). This section stated as follows:

### SECTION SIXTY–FOUR (11 U.S.C. § 104)

§ 64. Debts Which Have Priority. a. The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment shall be (1) the costs and expenses of administration, including the actual and necessary costs and expenses of preserving the estate subsequent to filing the petition;

\*     \*     \*     \*     \*     \*

Where an order is entered in a proceeding under any chapter of this Act directing that bankruptcy be proceeded with, the costs and expenses of administration incurred in the ensuing bankruptcy proceeding, including expenses necessarily incurred by a debtor in possession, receiver, or trustee in preparing the schedule and statement required to be filed by sections 238, 378, or 483, shall have priority in advance of payment of the unpaid costs and expenses of administration, including the allowances provided for in such chapter, incurred in the superseded proceeding and in the suspended bankruptcy proceeding, if any; (2) wages and commissions, not to exceed $600 to each claimant, which have been earned within three months before the date of the commencement of the proceeding, due to workmen, servants, clerks, or traveling or city salesmen on salary or commission basis, whole or part time, whether or not selling exclusively for the bankrupt; and for the purposes of this clause, the term "traveling or city salesman" shall include all such salesmen, whether or not they are independent contractors selling the products or services of the bankrupt on a commission basis, with or without a drawing account or formal contract;

\*     \*     \*     \*     \*     \*

§ 64 of the 1898 Act, former 11 U.S.C. § 104(a) (1976). The employees contend that their postconfirmation wages are a cost of administration. This position would have been more clearly supportable prior to

---

1. This opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

2. The claims were assigned claim numbers 155, 157–162, 165, 167–171, 173, 175–219 and 230–231.

the repeal of § 64(b) of the 1898 Act in 1952. *See,* Pub.L. No. 456, ch. 579, 66 Stat. 420, 426, July 7, 1952. Section 64(b) stated as follows:

Debts contracted while a discharge is in force or after the confirmation of an arrangement shall, in the event of a revocation of the discharge or setting aside of the confirmation, have priority and be paid in full in advance of the payment of the debts which were provable in the bankruptcy or arrangement proceeding, as the case may be.

§ 64(b) of 1898 Act, former 11 U.S.C. § 104(b) (1946). Congress repealed this section and contemporaneously enacted several other provisions which determine the priority of debts incurred after confirmation of a plan which ultimately fails. *See,* § 381 of Chapter XI, former 11 U.S.C. § 781 (1976); § 486 of Chapter XII, former 11 U.S.C. § 886 (1976); and § 669 of Chapter XIII, former 11 U.S.C. § 1069 (1976).

In this case § 381 is applicable. In pertinent part that section states as follows:

Sec. 381. Where, after the confirmation of an arrangement, the court shall enter an order directing that bankruptcy be proceeded with—

(1) * * *

(2) the unsecured debts incurred by the debtor after the confirmation of the arrangement and before the date of the entry of the final order directing that bankruptcy be proceeded with shall, unless and except as otherwise provided in the arrangement or in the order confirming the arrangement, share on a parity with the prior unsecured debts of the same classes, provable in the ensuing bankruptcy proceed-

ing, and for such purpose the prior unsecured debts of the same classes, provable in the ensuing bankruptcy proceeding, and for such purpose the prior unsecured debts shall be deemed to be reduced to the amounts respectively provided for them in the arrangement or in the order confirming the arrangement, less any payment made thereunder; and

(3) the provisions of chapters I to VII inclusive, of this Act, shall, insofar as they are not inconsistent or in conflict with the provisions of this section, apply to the rights, duties, and liabilities of the creditors holding debts incurred by the debtor after the confirmation of the arrangement and before the date of the final order directing that bankruptcy be proceeded with, and of all persons with respect to the property of the debtor, and for the purposes of such application, the date of bankruptcy shall be taken to be the date of the entry of the order directing that bankruptcy be proceeded with.

§ 381 of the 1898 Act, former 11 U.S.C. § 781 (1976). Section 381(2) states the general rule that obligations incurred after confirmation but before adjudication are entitled to the same priority as prepetition debts. Debts incurred during this period are not administrative debts as is indicated by the legislative history of § 381.[3] H.R. Rep. No. 2320, 82nd Cong., 2d Sess. 434 (952), reprinted in 1952 U.S.Code Cong. & Admin.News 1960, 1971. As applied to the case under scrutiny, the wages earned after confirmation but prior to adjudication are not administrative obligations. These claims share on a par with prepetition

---

**3.** The legislative history of § 381 in 1952 states that:

Accordingly, the new sections deal with the rights, duties, and liabilities of the creditors holding unsecured debts incurred by the debtor after confirmation of the arrangement or plan and before entry of the order directing bankruptcy, and also established the basis for sharing the ensuing bankruptcy liquidation between the new and the old provable unsecured debts. As to the debts incurred by a receiver or trustee, or by a debtor in possession, during the proceeding and before the debtor takes over the property upon confirmation of the arrangement or plan, such debts are already adequately cared for as administration costs and, thus, require here no special or further treatment.

H.R.Rep. No. 2320, 82nd Cong., 2d Sess. (1952), reprinted in 1952, U.S.Code Cong. & Admin. News 1960, 1971; see also, 9 *Collier on Bankruptcy* ¶ 10.19 (14th ed. 1978).

wages, except that the prepetition claims are deemed reduced by the amounts provided in the plan of arrangement. Consequently, the wage claimants are entitled to a total wage priority of no more than $600.00 per claimant rather than an administrative priority for each entire claim. § 64(a) of the 1898 Act, former 11 U.S.C. § 104(a) (1976).[4]

■ The second issue confronting us is whether the wage claimants are entitled to claim union dues, support payments or credit union payments, which were not deducted from the claimants' salaries notwithstanding their directions contrariwise. The claimants cite case law holding that assigned claims generally have the same priority in the hands of the assignee as they did while in the possession of the assignor. *Shropshire, Woodliff and Co. v. Bush*, 204 U.S. 186, 27 S.Ct. 178, 51 L.Ed. 436 (1907). The trustee contends that since it appears that the wages have, in fact, been assigned, the wage claimants have no standing to request disbursement of the funds. We conclude that the trustee is correct. The claimants have no standing to assert a claim for wages they assigned. The assignees are the proper parties to assert the claims.

We will accordingly enter an order sustaining the trustee's objection to the asserted status of certain wage claims as administrative claims. We will also sustain the trustee's objection to those portions of certain wage claims which request payment of assigned wages.

---

**4.** In arguing against this result the employees cite three cases, the first of which is *Wil-Low Cafeterias, Inc.*, 111 F.2d 429 (2d Cir.1940). This case is inapposite to the issue at hand since (1) the case was decided prior to the 1952 amendments to the 1898 Act and (2) no confirmable plan of arrangement was presented. The second case, *In Re Capital Service, Inc.*, 136 F.Supp. 430 (S.D.Cal.1955), differs from the case at bench in that no chapter XI plan of arrangement was ever confirmed. The third case, *In Re W.T. Grant Co.*, 17 Collier Bankr.Cas. (MB) 687 (Bankr.S.D.N.Y. June 7, 1978), we find unpersuasive since no mention is made of § 781, which is the controlling provision at issue in our case.