## AMERICAN SURETY CO. OF NEW YORK *v.* SAMPSELL, TRUSTEE IN BANKRUPTCY.

No. 142.   Argued January 28, 1946.—Decided February 25, 1946.

*Homer Cummings* argued the cause for petitioner. With him on the brief were *Carl McFarland* and *Gordon F. Hampton*.

*Martin Gendel* argued the cause for respondent.   With him on the brief was *Thomas S. Tobin*.

Mr. Justice Black delivered the opinion of the Court.

This case raises questions concerning the equitable power of a federal bankruptcy court to subordinate claims of some creditors to those of others. The creditors are a surety entitled to subrogation for payments upon its surety bond and laborers and materialmen for whose benefit the bond was executed.

Stratton, now in bankruptcy, made certain alterations in factory buildings located in California. In connection with this project Stratton as principal, and the petitioner, American Surety Company of New York, as surety, executed a joint statutory bond for $39,500, by which they bound themselves to pay all persons furnishing materials for, or performing work on, the job. The bond strictly conformed in all respects with requirements of the California law governing laborers' and materialmen's liens and was filed and recorded as provided by § 1183 of the California Code of Civil Procedure. Parts of the bond's language incorporated portions of §§ 1183 and 1187 of the California Code of Civil Procedure which provide that "no action" on a recorded bond may be maintained unless within a specified statutory period a mechanic's lien claim shall have been filed or the surety shall have been given notice of the unpaid claim.

Because of financial difficulties Stratton was unable to pay all the laborers and materialmen. Some of them, with claims aggregating $6,724.78, filed lien claims and gave notice within the statutory period and the surety paid their claims in full. Others failed to file claims or give the required notice and the surety did not pay them.

Stratton was later adjudged a bankrupt. The petitioner surety company filed a claim for the money it had been compelled to expend in payment of the materialmen and laborers who had given the statutory notice. Its claim rested on an agreement by Stratton to indemnify it and on the equitable doctrine of subrogation. Three of

the materialmen and laborers who had failed to give notice also filed claims totalling $1,336.11 owed them for materials furnished and work performed. The referee allowed all of these claims including that of the surety company as general claims in bankruptcy. Upon motion of the respondent trustee, the referee subordinated the petitioner's claim to that of the unpaid laborers and materialmen, holding that as long as there are "creditors of the class for whose benefit the original surety bond was written . . . the Surety Company cannot participate in dividends from the estate until these creditors have been paid in full." Thus under the order the three unpaid laborers and materialmen were to receive in addition to dividends on their own claims a pro-rata share of dividends otherwise due the petitioner until they had been paid in full or the petitioner's dividend had been exhausted. The district court sustained the referee's order, 53 F. Supp. 131, and the circuit court of appeals affirmed, 148 F. 2d 986. We granted certiorari because of petitioner's contention that the order subordinating its claims failed to take into consideration contractual rights of the surety under state law.

Petitioner argues that because the state statute incorporated into the bond requires laborers and materialmen either to file a lien claim or notify the surety within a specified period after completion of the job, the referee erred in subordinating the surety's claim to those of the laborers and materialmen who had not complied with the statutory notice provision. The rights of those creditors, it is argued, had never, under California law, been more than inchoate, and even as such had been completely extinguished prior to the bankruptcy proceedings because of a failure to give the statutory notice. Consequently, the petitioner urges, these claims ought not to be preferred in a federal bankruptcy proceeding. We think this contention is without merit and that the order of the referee was correct.

We recently had occasion to reiterate that federal bankruptcy law, not state law, governs the distribution of a bankrupt's assets to his creditors. *Prudence Realization Corp.* v. *Geist,* 316 U. S. 89, 95. See also *Pepper* v. *Litton,* 308 U. S. 295, 303–306; *Prudence Realization Corp.* v. *Ferris,* 323 U. S. 650, 653. True, we stated in both *Prudence* opinions that the federal law governing distribution of a bankrupt's estate should be applied with "appropriate regard for rights acquired under rules of state law . . ." But the extent to which state law is to be so considered is in the last analysis a matter of federal law. Here the referee's subordination of the surety company's claim did not only follow the well-established rule under federal bankruptcy law, but also achieved a result in complete harmony with California's aim, expressed by both its Constitution[1] and statutes, of providing materialmen's and workers' claims with extraordinary security.

The established federal rule of distribution in a situation such as the one before us was clearly set forth in *American Surety Co.* v. *Westinghouse Electric Co.,* 296 U. S. 133. In that case the surety company had paid out to various creditors the full amount of the statutory surety bond and filed a claim in the bankruptcy proceeding based on those payments. The surety company argued that since its full liability had been extinguished, it should be permitted to share ratably with all the bankrupt's general creditors. That contention was rejected. The Court pointed out that while liability of the surety company had ended, controlling equitable principles forbade the surety

---

[1] Article XX, § 15, of the Constitution of the State of California is as follows:

"Mechanics, materialmen, artisans, and laborers of every class, shall have a lien upon the property upon which they have bestowed labor or furnished material for the value of such labor done and material furnished; and the Legislature shall provide, by law, for the speedy and efficient enforcement of such liens."

from sharing the bankrupt's assets on equal terms with any creditors who were members of the class its bond had been given to protect. The rule stated by the Court was that where insolvency supervenes, a surety's claim is postponed until payments in full are made to all "claimants who are members of the class of creditors covered by the bond."

The petitioner attempts to distinguish this case by arguing that the materialmen and workers to whose claims its claim has been subordinated were not "covered by the bond." This contention rests on the claim that according to the construction of the applicable state statutes by the California courts the bond does not protect materialmen and workers who, as the ones here involved, have not complied with statutory filing and notice provisions. While this claim as to California law is denied by the respondent, we need not resolve the dispute. For even if petitioner's claim as to California law is correct, the creditors in the *Westinghouse* case were certainly no more protected by that bond after the surety had paid out the full amount, than the materialmen and laborers are said to be protected here after the time for notifying the surety had expired. The phrase "covered by the bond" as used in the *Westinghouse* case did not have the meaning petitioner ascribes to it but had reference rather to the class of creditors for whose benefit the statutory bond was executed. All materialmen and laborers who contributed to Stratton's job clearly come within that class. The basic reason for the rule announced in the *Westinghouse* case applies with equal force here. The bond was intended to protect materialmen and laborers who worked on the job so that they would not have to bear the risk of Stratton's insolvency. But for his insolvency and bankruptcy these laborers and materialmen would have been able to recover from him the money due them, no matter what their rights against the surety might have been. Conse-

quently the surety should not, by claiming under subrogation or indemnity for money paid to some of the creditors for whose benefit the bond was intended, be allowed to reduce the share of the bankrupt's assets due to other creditors whom the bond also was intended to protect from insolvency. For this would tend to defeat the very purpose for which the bond was given and therefore cannot be permitted under the equitable principles governing distribution of a bankrupt's assets. *Prudence Realization Corp.* v. *Geist, supra,* at p. 96.

*Affirmed.*

MR. JUSTICE JACKSON took no part in the consideration or decision of this case.