## STANDARD ACCIDENT INS. CO. v. UNITED STATES.

### No. 46116.

United States Court of Claims.
June 5, 1951.

John J. Wilson, Washington, D. C., for plaintiff.

Philip S. Peyser, and Whiteford, Hart, Carmody & Wilson, all of Washington, D. C., were on the brief.

Robert E. Mitchell, Washington, D. C., with whom was Asst. Atty. Gen. H. G. Morison, for defendant.

Plaintiff was surety for the Graves-Quinn Corporation under a Government contract and upon default of the contractor completed the work called for by such contract. Plaintiff, as surety, took over and completed the contract, expending $24,-853.33 in so doing, in addition to $53,704.65 under a payment bond to laborers and

materialmen. Upon completion there was a balance of $14,658.37 due from the Government. Of this amount, $9,444.37 was the balance of the contract price due upon completion and $5,214 represented the percentages retained by the Government from payments to the contractor prior to its default. The latter amount was not paid but was offset, $5,194 on account of employment taxes due the defendant by the defaulting contractor, and $20 on account of another claim against the contractor. In this action, the surety seeks to recover the amount of $5,194.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

LITTLETON, Judge. · ·

■ Plaintiff company, surety on a Government contractor's performance bond, completed the contract after its principal defaulted. Under the terms of the contract the Government had retained certain percentages from the payments made to the contractor during the progress of the work before its default. The question here is whether the completing surety's right to the retained percentages is superior to the right of the Government to apply them in partial satisfaction of taxes owed by the contractor. It is settled that a surety satisfying its principal's obligation on a bond securing payment to laborers and materialmen is not so favored. United States v. Munsey Trust Co., 332 U.S. 234, 67 S.Ct. 1599, 91 L.Ed. 2022. The issue is whether completion under a performance bond gives the surety a better right. We hold that it does not.

Plaintiff's principal entered into two construction contracts with the United States, an Army contract and a Coast Guard contract. As required by law, it furnished two bonds for each contract, one to secure the contract's performance, the other to secure payment to laborers and materialmen. Plaintiff was surety on the bonds. The contractor defaulted in its payment obliga-

tions on both jobs and the surety made good on the payment bonds. The contractor completed the Army contract, freeing the surety from the obligation of the performance bond for that contract. This suit arises out of the Coast Guard contract, which was 95 percent completed when a petition in bankruptcy was filed against the contractor and it suspended performance. Plaintiff took over and completed the contract at a cost of $24,853.33.

Upon completion of the Coast Guard contract there was a balance of $14,658.37 remaining due from the Government. Of this amount, $5,214 represented the percentages retained from the payments made to the contractor for work done before its default, and $9,444.37 was the amount of the contract price earned by the completing surety. The General Accounting Office authorized payment to plaintiff of the $9,444.37. But it set off the entire amount of the retained percentages, which the surety also claimed, in partial satisfaction of social security taxes owed by the contractor.[1]

■ Plaintiff contends that defendant had no right to set off against the retained percentages because they were sums dedicated to the completion of the contract to which the surety became entitled in its own right when it stepped into the contractor's shoes and fulfilled the contractor's obligation to the United States. In other words, plaintiff bases its claim on subrogation to the rights of the United States. A completing surety is of course entitled to retained percentages as against its principal. See Restatement of Security, § 141; see also the annotations at 45 A.L.R. 379; 134 A.L.R. 738; and 164 A.L.R. 613. The surety's right is superior to the right of an assignee of the principal which lent money to be used in performance. Prairie State Nat. Bank v. United States, 164 U.S. 227, 17 S.Ct. 142, 41 L.Ed. 412; Royal Indemnity Co. v. United States, 92 F.Supp. 1003, 117 Ct.Cl. 736. A surety satisfying its principal's obligation to the United States

1. Actually, the General Accounting Office set off $5,194 to partially liquidate the contractor's tax debt and $20 to satisfy a claim against the contractor for its unauthorized use of a Government boat and boathouse in performing the work. Plaintiff has abandoned its claim for the $20 set-off.

is also entitled to be subrogated to the priority of the United States. See 31 U.S. C.A. § 193; see also the annotations at 24 A.L.R. 1502, and 83 A.L.R. 1131. The Supreme Court has held, however, that a surety's right of subrogation to the priority of the United States cannot operate contrary to the interest of the United States. United States v. National Surety Co., 254 U.S. 73, 41 S.Ct. 29, 65 L.Ed. 143. A similar principle is, we think, applicable here.

▮ The retained percentages represented money earned by the contractor from the United States and due it from the United States when it completed the contract. But the United States has a right to set off its creditor's debt to it before paying its debt to the creditor. United States v. Munsey Trust Co., supra, 332 U.S. at pages 239–240, 67 S.Ct. at pages 1601–1602, 91 L.Ed. 2022. The United States cannot be deprived of its right of set-off by the circumstance that the completing surety rather than the contractor is claiming the fund. The contractor, plaintiff's principal, was both a debtor and a creditor of the United States. Plaintiff surety seeks to step into its principal's shoes as a creditor of the United States but not as its debtor. We hold that as against the United States the surety is in no better position than its principal. As we said in Globe Indemnity Co. v. United States, 84 Ct.Cl. 587, 595, certiorari denied 302 U.S. 707, 58 S.Ct. 26, 82 L.Ed. 546:

"Sureties on a Government contract are in contractual relationship with the United States only through the contract of their principal and while in a proper case they may be subrogated to the rights of the United States to any funds or securities in its hands due the contractor under the contract, or which it might use for any legitimate purpose under the contract, such as the payment of claims for materials or labor, or for completion of the contract upon default of the principal, such right of the surety to lay claim against the Government to such fund or securities arises only by reason of their subrogation initially to the rights of the principal, the contractor, with the United States. In other words [the sureties'], right to recover any amount from the United States is and must be based upon [the contractor's] contract. The party for whose benefit the doctrine of subrogation is exercised can acquire no greater rights than those of the party for whom he is substituted. The doctrine of subrogation was never intended to be used as an instrument to circumvent the principles of equity and by circuitous action to permit the assignee to be placed in a more advantageous position than the assignor from his rights devolved."

We agree with defendant that the decision in United States v. Munsey Trust Co., supra, controls the case at bar. In that case the contractor completed the work but left laborers and materialmen unpaid. The surety satisfied this indebtedness under the payment bond and claimed the retained percentages. The Comptroller General set off against the retained percentages the damages sustained by the Government as a result of the contractor's default on a bid on another contract. We denied the Government's right to do so and gave judgment for the surety, 67 F.Supp. 976, 107 Ct. Cl. 131. The Supreme Court reversed. The Supreme Court distinguished cases such as Prairie State Nat. Bank v. United States, supra, where the Government was a mere stakeholder with no rights of its own to assert. It specifically rejected the surety's contention and our holding that the United States was in no better position than a general creditor of the contractor and that its right was therefore inferior to the rights of the surety and the laborers and materialmen whom the surety had paid. The Supreme Court said, 332 U.S. at page 240, 67 S.Ct. at page 1602, 91 L.Ed. 2022:

"* * * And one whose own appropriation and payment of money is necessary to create a fund for general creditors is not a general creditor. He is not compelled to lessen his own chance of recovering what is due him by setting up a fund undiminished by his claim, so that others may share it with him. In fact, he is the best secured of creditors; his security is his own justified refusal to pay what he owes until he is paid what is due him."

Also rejected was the argument that the surety prevailed because subrogated to the

rights of the United States. Plaintiff had contended that the money was retained to assure performance of all the contractor's obligations and that the surety, having performed one of those obligations, was perforce entitled to it. The Supreme Court made clear its opinion that completion of the work on time was the only motive for retaining the money. The Court then went on to say: "In any event, we are not prepared to apply law relating to security [that an obligee, as against a surety, may not apply security in satisfaction of debts other than the one it secures] to unappropriated sums which exist only as a claim." 332 U.S. at page 243, 67 S.Ct. at page 1603, 91 L.Ed. 2022.

The Court went further to dispose of a contention appropriate to that case but not to this: it held that the surety gained nothing by claiming the rights of the laborers and materialmen whom it had paid since these had no enforceable rights against the United States and no lien on the retained percentages.

We cannot agree that a different result is dictated by the fact that Munsey involved a payment bond and this case a performance bond. Cf. Schmoll v. United States, 63 F.Supp. 753, 105 Ct.Cl. 415, 453–454. The Supreme Court's holding in Munsey that the United States did not, by requiring its contractor to be bonded, lose its right to set off its contractor's debts from the retained percentages is applicable to both situations.

[8] In fact, this case is even stronger for the Government than was Munsey. There, the claim for damages which the United States set off was completely unrelated to the contract in respect of which the retained percentages were held. Here, a liquidated tax liability was set off. The tax debt arose, moreover, partly out of work under the very contract which plaintiff completed under its performance bond and partly out of work under another on which it was also surety and in respect of which it paid subcontractors and materialmen under its payment bond. Furthermore, in the case at bar the contractor was adjudicated a bankrupt before the surety took up performance of the contract. The United States has a statutory preference in the assets of its insolvent debtors, 31 U.S.C.A. § 191. In such cases the priority of the United States defeats the equity of the insolvent's surety in percentages retained under the insolvent's contract with the United States. Seaboard Surety Co. v. United States, 67 F.Supp. 969, 107 Ct.Cl. 34, and Schmoll v. United States, supra.

We do not, however, rest our judgment on the statutory priority of the United States or on the offset debt's close relation to the contract. The rationale of the Munsey case applies and would postpone plaintiff's right to the retained percentages to that of the United States even if the contractor had not been formally declared insolvent and even if the contractor's debt to the United States bore no relation to the contract from which the retained percentages derived.

Plaintiff suggests in its brief that its right to this money was established by the order of the contractor's referee in bankruptcy which directed that any monies due the bankrupt on this contract be paid to plaintiff rather than to the trustee. Plaintiff points out that the Government had the opportunity to assert its right of set-off befor the referee and failed to do so. Plaintiff did not raise this point in oral argument. We think it is without substance.

The petition is dismissed. It is so ordered.