UNITED PACIFIC INSURANCE COMPANY

v.

The UNITED STATES and Tinkham GILBERT, Trustee in Bankruptcy of Floyd R. Grubb, Third-Party.

No. 110-61.

United States Court of Claims.
July 12, 1963.

894

Edward Gallagher, Washington, D. C., for plaintiff.

T. W. Churchill, Salem, Or., for third party.

Gerson B. Kramer, Silver Spring, Md., with whom was Asst. Atty. Gen. John W. Douglas, for defendant.

Before WHITAKER, Acting Chief Judge, REED, Justice (Retired), sitting by designation, and LARAMORE, DUR-FEE and DAVIS, Judges.

WHITAKER, Judge.

Pursuant to the terms of a contract between Floyd R. Grubb, d/b/a Floyd R. Grubb Construction Company (hereinafter called the contractor), and the United States, acting through the Department of the Interior, Bureau of Reclamation, for the construction of certain earthwork, structures, and surfacing relocation of Trinity County Road in the State of California, the United States is withholding $48,087.63 (consisting of an earned estimate of $19,339.68, plus retainage of $28,747.95). Entitlement to this fund is claimed by both the plaintiff, United Pacific Insurance Company, as surety upon payment and performance bonds executed on behalf of the contractor, and by third-party, Tinkham Gilbert, Trustee of the Estate of Floyd R. Grubb, Bankrupt. The surety and the trustee each move for summary judgment.

The United States has filed a counterclaim or offset for $930.67, with interest, for Federal withholding and unemployment taxes which were duly assessed against the bankrupt contractor and are still owing. The parties have conceded this claim as a valid offset against the claims of the surety and the trustee. United States v. Munsey Trust Co., 332 U.S. 234, 67 S.Ct. 1599, 91 L.Ed. 2022 (1947); Cf. Pearlman v. Reliance Insurance Company, 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962). The Government otherwise admits holding an unexpended contract balance of $48,087.63.

The material facts, as established by the pleadings and supporting affidavits, show that the contracting parties entered into their agreement on or about July 10, 1959, at which time the surety furnished its performance and payment bonds in accordance with the requirements of the so-called Miller Act, 49 Stat. 793 (1935), 40 U.S.C. § 270a (1958). The contractor proceeded with performance of the work until January 15, 1960, when he declared himself in default. The surety then assumed its obligations under both its performance and payment bonds, completing the work in August of 1960 (ahead of schedule) and paying all outstanding legitimate claims presented, at the total cost of $227,000.90.

On October 25, 1960, the contractor was adjudicated a bankrupt upon a voluntary petition filed by him in the United States District Court for the District of Oregon, and Mr. Tinkham Gilbert was appointed Trustee by order of that court.

It is the surety's position that under established principles of subrogation and exoneration, it is entitled to succeed to the rights of the United States, as well as to the rights of subcontractors, laborers and materialmen to whom it has paid monies by virtue of the terms of its bonds, and that its claim is superior to that of the Trustee in Bankruptcy. The surety's claim absorbs the entire contract balance, inasmuch as its loss under the bonds is in excess of this amount.

The trustee contends that his claim to the fund held by the United States is superior to the claim of the surety on the ground that the contractor did not default, but did, in fact, complete performance of the contract, thus eliminating the performance bond. He further contends that the surety has no right of subrogation under the payment bond because a necessary prerequisite to the right to subrogation herein is that the surety shall have paid *all* subcontractors, mate-

rialmen and laborers, which, he alleges, the surety has not done.

The superior rights of the surety of a defaulting contractor to subrogation, when the surety completes the contract after the default of its principal and has paid all claims of laborers and materialmen arising from said contract, was settled by the Supreme Court long ago concerning both performance bonds (Prairie State Bank v. United States, 164 U.S. 227, 17 S.Ct. 142, 41 L.Ed. 412 (1896)) and payment bonds (Henningsen v. United States Fidelity and Guaranty Company, 208 U.S. 404, 28 S.Ct. 389, 52 L.Ed. 547 (1908)). Following these opinions, this court has upheld the superior rights of sureties as against the claim of an assignee bank, a financing institution, a trustee in bankruptcy, and other third parties. See National Surety Corporation v. United States, 133 F.Supp. 381, 132 Ct.Cl. 724 (1955) cert. denied First Bank of Houston v. United States, 350 U.S. 902, 76 S.Ct. 181, 100 L.Ed. 793; Continental Casualty Company v. United States, 169 F.Supp. 945, 145 Ct.Cl. 99 (1959).

Because some confusion developed among the circuits concerning the status of the Prairie Bank and Henningsen cases after the passage of the Miller Act, supra, and the opinion in United States v. Munsey Trust Company, supra, the Supreme Court, in order to settle the question, granted certiorari in the case of Pearlman v. Reliance Insurance Company (Pearlman was a trustee in bankruptcy, to whom the Government had turned over the funds withheld from the contractor). In its opinion (371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962)) the Supreme Court reviewed and analyzed its prior decisions as well as the Miller Act, and concluded that the "equitable principles so deeply imbedded in our commercial practices, our economy, and our law as spelled out in the Prairie Bank and Henningsen cases," were not repudiated by the passage of the Miller Act and were likewise left undisturbed by Munsey. The court held that "the Government had a right to use the retained fund to pay laborers and materialmen; that the laborers and materialmen had a right to be paid out of the fund; that the contractor, had he completed his job and paid his laborers and materialmen, would have become entitled to the fund; and that the surety, having paid the laborers and materialmen, is entitled to the benefit of all these rights to the extent necessary to reimburse it."

█ We think this case is dispositive of the one before us, unless two affirmative defenses advanced by the trustee in this case are well taken. The affidavits submitted by the surety in support of its motion establish the contractor's default, knowledge of the default by both the surety and the United States, the surety's completion of the work under the contract, and its payments to laborers and materialmen.

The trustee has made statements in his brief that the surety somehow induced the contractor to default, and that this was a wrong which of itself defeats the default—thus his allegation in his pleadings that there was no default by the contractor. The statement that the surety induced the default is unsupported by affidavits or other documents, and is directly contrary to the letter of the contractor to the Department of the Interior and other exhibits filed by plaintiff. But even if the contractor's default was the result of a business arrangement between him and the surety, the fact remains that the contractor did default and the surety did complete the contract and paid the claim of laborers and materialmen, at a total cost to it of $227,000.90. The trustee's allegation is not only contrary to the facts, but, if true, is of no legal significance.

█ In his second affirmative defense, that there are laborers and materialmen who remain unpaid, the trustee directs our attention to a Mr. J. W. Briggs. It appears that Briggs has sought payment from the surety as a subcontractor for labor and materials furnished, and that the surety has refused to pay this claim on the ground that Briggs was not a laborer or materialman, but, instead, a

lender of money to the contractor and, hence, not covered by the payment bond. If Briggs was in fact a laborer or materialman, he would have no right to assert a claim against the money in the hands of the Government;[1] his sole remedy is on the payment bond. United States v. Munsey Trust Co., supra. The right of a laborer or materialman to prosecute a suit on the payment bond in the name of the United States is fully set out in the Miller Act, 40 U.S.C. § 270b (b) (1958), which Act gives the Federal District Courts exclusive jurisdiction. This was the forum and the procedure established by Congress for the protection of laborers and materialmen for claims arising under the bonds required by the Miller Act. Briggs has, in fact, started timely litigation against the surety on the payment bond, which suit is now pending in the United States District Court, Northern District of California, Northern Division.[2] If Mr. Briggs

was in fact a materialman, and, so, prevails in District Court, he will, by force of judgment, be paid by the surety. As such, he cannot assert a claim against the funds in the hands of the United States and, hence, the trustee's allegation that Briggs was a materialman and has not been paid by the surety does not defeat the right of the surety to subrogation on account of the amounts it has already paid to materialmen and laborers, to the extent of the funds held by the United States.

The motion of plaintiff, United Pacific Insurance Company, for summary judgment is granted, but subject to an offset of the amount of taxes, plus interest, due to the United States, as set forth in defendant's counterclaim. The amount of recovery will be determined in accordance with Rule 38(c). The motion of third-party, Tinkham Gilbert, Trustee in Bankruptcy, for a summary judgment is denied, and his petition is dismissed.

---

1. There is no question in this case of the solvency of the surety.

2. The United States of America, for the use of J. W. Briggs, v. Floyd R. Grubb,

United Pacific Insurance Company, a Corporation, Civil No. 8179.