**Frank J. BARRETT, Director of Insurance and Head of the Department of Insurance, State of Nebraska**

**v.**

**The UNITED STATES.**

**No. 249-65.**

United States Court of Claims.

Nov. 10, 1966.

Paul A. Phillips, Omaha, Neb., attorney of record, for plaintiff.

Edward L. Metzler, Washington, D. C., with whom was Acting Asst. Atty. Gen. J. William Doolittle, for defendant.

William F. Kelly, Washington, D. C., for Royal Indemnity Co., amicus curiae, Hans W. E. Seltmann, White Plains, N. Y., Richard A. Bartl, and Richard H. Nicolaides, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS and COLLINS, Judges.

COWEN, Chief Judge.

Plaintiff,[1] claiming as subrogee of laborers and materialmen whose claims against their contractor it has paid, demands $23,805.74 which was offset against a larger sum owing by the Government to the contractor for which it was surety. Defendant moved to dismiss the petition for failure to state a claim upon which relief may be granted and for lack of jurisdiction in this court of a claim by a subrogee of laborers and materialmen. The facts, as set forth in the petition, are as follows:

In March 1961, United wrote Miller Act[2] payment and performance bonds for the Cecil Nickell Construction Company [hereinafter Nickell], a contractor with the United States Public Health Service, Department of Health, Education, and Welfare. Pursuant to contract, the Public Health Service retained part of the sums periodically due Nickell. The "retainages" were to be paid upon completion and acceptance of the project and payment of all claims for labor and materials used in the project.

The Internal Revenue Service served a notice of levy on the Public Health Service in January 1962, for assessed deficiencies on Nickell's 1960 income tax, delinquency penalty thereon, employment taxes, and interest. In April 1962, Nickell completed work on the project and made claim for adjustment of the contract price, to be reflected in the final payment due. Nickell did not, however, fully pay his laborers and materialmen, and an action was brought on their behalf under the Miller Act against United, Nickell's payment bond surety. In January 1965, United lost an appeal from a federal district court order to pay these obligations,[3] and claims exceeding $75,000 were paid.[4]

United and the Department of Health, Education, and Welfare had settled on $74,374.62 as the amount remaining to be paid under the contract with Nickell. This money was disbursed in April 1965, with HEW issuing a check to the Internal Revenue Service for $23,805.74 for delinquency penalty on Nickell's 1960 income tax,[5] employment taxes owing by Nickell, and interest. The balance was paid to United.

Plaintiff, claiming that the setoff was improper, asserts that it is subrogee to the rights of Nickell's laborers and materialmen[6] in the retained fund and that these rights are superior to any right of setoff possessed by the United States.

Our initial inquiry is, of necessity, whether laborers and materialmen

1. Frank J. Barrett, Director of Insurance and Head of the Department of Insurance of the State of Nebraska, is the "liquidator" of the original petitioner, United Benefit Fire Insurance Company [hereinafter United], and has been substituted as party plaintiff.

2. 49 Stat. 793 (1935), as amended, 40 U.S.C. § 270a et seq. (1964).

3. Nickell v. United States for Use and Benefit of Texas Vitrified Pipe Co., 340 F.2d 117 (10th Cir. 1965).

4. Petitioner's claim in the instant case is as subrogee to the claims of the laborers and materialmen whom it has paid.

5. Carryback of Nickell's losses in subsequent years eliminated the 1960 income tax deficiency, but the delinquency penalty was still assessed. 26 U.S.C. § 6651(a) (1964).

6. Petition, paragraphs 8 and 11. In his petition, plaintiff does not claim as subrogee of Nickell or the United States.

have any judicially cognizable rights to recover from the United States amounts it has withheld from the contractor. Petitioner claims as the subrogee of these laborers and materialmen, and "[a] subrogee stands in the shoes of the subrogor and has no better rights than those possessed by the latter." Berkeley v. United States, 276 F.2d 9, 12, 149 Ct.Cl. 549, 555 (1960). It is an elementary law of suretyship "that one cannot acquire by subrogation what another whose rights he claims did not have." United States v. Munsey Trust Co., 332 U.S. 234, 242, 67 S.Ct. 1599, 1603, 91 L.Ed. 2022 (1947), rev'g Munsey Trust Co. of Washington, D. C. v. United States, 67 F. Supp. 976, 107 Ct.Cl. 131 (1946).

■ It has been long and consistently held that laborers and materialmen do not have legally enforceable rights against the United States for their compensation.[7] United States v. Munsey Trust Co., supra; Continental Cas. Co. v. United States, 164 Ct.Cl. 160 (1964); United Pac. Ins. Co. v. United States, 319 F.2d 893, 162 Ct.Cl. 361 (1963). Their remedy is on the surety's payment bond in an action exclusively within the jurisdiction of the district courts under the Miller Act.

■ It is equally well settled that the right of the United States to collect taxes and other debts due by the contractor by offsetting the obligations against funds retained under a Government contract is superior to the claims of the surety or of other private parties. United States v. Munsey Trust Co., supra; Standard Acc. Ins. Co. v. United States, 97 F.Supp. 829, 119 Ct.Cl. 749 (1951); United Pac. Ins. Co. v. United States, 362 F.2d 805, 176 Ct.Cl. —— (June 1966).

However, plaintiff contends that the rule enunciated by the Supreme Court in

Munsey Trust has been severely limited by Pearlman v. Reliance Ins. Co., 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962) and that the latter decision requires this court to return to its holding in Munsey Trust Co. v. United States, 67 F.Supp. 976, 107 Ct.Cl. 131 (1946). In rejecting this contention, we think it is essential to recognize the distinction between those cases in which the United States is a claimant to contract retainages and those in which the United States is a neutral stakeholder and where the contest is between the surety and other private claimants to the stake.[8]

When the factual patterns in Munsey Trust and Pearlman are compared, it is evident that the holdings in both opinions are consistent and that Pearlman in no way limits the rule of Munsey Trust that the United States has a right, superior to rights of the surety, to apply funds in its hands to extinguish debts due the Government by the contractor from whom the funds are withheld.

In Munsey Trust the dispute was between a Miller Act surety, which had paid the claims of laborers and materialmen and which claimed subrogation to their rights, and the United States, which had retained sums due the contractor on the contract for which the surety had written the payment bond and which was asserting a setoff against those retainages for a claim against the contractor arising out of another contract. The Supreme Court held that "[t]he government has the same right 'which belongs to every creditor, to apply the unappropriated moneys of his debtor, in his hands, in extinguishment of the debts due to him.' Gratiot v. United States, 15 Pet. 336, 370, 10 L.Ed. 759." Id., 332 U.S. at p. 239, 67 S.Ct. at p. 1602. The Court distinguished between the Government as a "mere stakeholder" of the

7. It should be noted that when the Miller Act suit was brought against the surety, it was solvent, and the laborers and materialmen collected on the surety's bond.

8. For cases involving the surety's rights where the United States is a mere stake-

holder, see e. g. National Surety Corp. v. United States, 133 F.Supp. 381, 132 Ct. Cl. 724 (1955); Continental Cas. Co. v. United States, 169 F.Supp. 945, 145 Ct.Cl. 99 (1959); United Pac. Ins. Co. v. United States, 319 F.2d 893, 162 Ct.Cl. 361 (1963).

retainages, and the Government as a competing claimant to them.

> [T]he surety urges that it is subrogated * * * to the rights of laborers and materialmen whom it paid * * *. From Prairie State Nat. Bank of Chicago v. United States, 164 U.S. 227, 17 S.Ct. 142, 41 L.Ed. 412, to American Surety Co. [of N. Y.] v. Sampsell, 327 U.S. 269, 66 S.Ct. 571, 90 L.Ed. 663, we have recognized the peculiarly equitable claim of those responsible for the physical completion of building contracts to be paid from available moneys head of others whose claims come from the advance of money. But in all those cases, the owner was a *mere stakeholder and had no rights of its own to assert.* 332 U.S. at 240, 67 S.Ct. at 1602 [Emphasis added].

The United States, as claimant to the retainages, was held not be a general creditor over whom these long-recognized "equitable rights" might be asserted, but rather to be "the best secured of creditors," the security being the "justified refusal to pay what * * * [it] owes until * * * [it] is paid what is due" from the contractor. Ibid.

> If the United States were obligated to pay laborers and materialmen unpaid by a contractor, the surety who discharged that obligation could claim subrogation. But nothing is more clear than that *laborers and materialmen do not have enforceable rights against the United States* * * *. Id. at 241, 67 S.Ct. at 1602 [Emphasis added].

In *Pearlman* and the cases upon which it is based,[9] the United States was not a claimant adverse to the plaintiff. In *Pearlman* the dispute was between the contractor's trustee in bankruptcy and his Miller Act surety. The surety had paid, pursuant to the payment bond, some $350,000 to discharge the bankrupt contractor's debts for labor and materials. The Government subsequently paid $87,737 in retainages to the contractor's trustee, and the case concerned who was entitled to this sum. The Supreme Court recognized that *Munsey Trust* was concerned with the right of the United States to set off its claims against debts it owed to another, rather than with the relative rights of others to money which the United States was not itself claiming. 371 U.S. at 140–141, 83 S.Ct. 232. The Court observed that the surety had "equitable rights" in the retainages, and that in *Munsey Trust* it had similarly recognized these rights. Ibid.; see 332 U.S. at 240, 67 S.Ct. 1599. But these were "rights" vis-a-vis claimants to the fund *other* than the United States. The cases both before and after *Pearlman* have recognized this vital distinction between instances in which the United States is claimant to the funds in its possession and those situations in which the United States is an impartial stakeholder of funds confessedly owing to one of the contesting parties.[10]

The Supreme Court in *Pearlman* did say that "the laborers and materialmen had a right to be paid out of the [retained fund]," 371 U.S. at 141, 83 S.Ct. at 237; but this right is the analogue of the "equitable obligations" of the United

**9.** Henningsen v. United States Fid. & Guar. Co., 208 U.S. 404, 28 S.Ct. 389, 52 L.Ed. 547 (1908) and Prairie State Bank v. United States, 164 U.S. 227, 17 S.Ct. 142, 41 L.Ed. 412 (1896). See 371 U.S. at 141, 83 S.Ct. 232.

**10.** See, e. g., United Pac. Ins. Co. v. United States, 362 F.2d 805, 176 Ct.Cl. —— (June 1966) ; Continental Cas. Co. v. United States, 164 Ct.Cl. 160 (1964); National Sur. Corp. v. United States, 133 F.Supp. 381, 132 Ct.Cl. 724, cert. denied sub nom. First Nat'l Bank in Houston v. United States, 350 U.S. 902, 76 S.Ct. 181, 100 L.Ed. 793 (1955) ; Royal Indemnity Co. v. United States, 93 F.Supp. 891, 117 Ct.Cl. 736 (1950) ; Glassman Constr. Co. v. Fidelity & Cas. Co. of N. Y., 123 U.S.App.D.C. 1, 356 F.2d 340 (1966) ; In re Bruce Constr. Corp., 217 F.Supp. 926 (S.D.Fla.1963), rev'd on other grounds sub nom. United States v. Owens, 329 F.2d 678 (5th Cir. 1964).

States "to see that the laborers and supply men were paid." Henningsen v. United States Fid. & Guar. Co., 208 U.S. 404, 410, 28 S.Ct. 389, 391 (1908); United Pac. Ins. Co. v. United States, 319 F. 2d 893, 162 Ct.Cl. 361 (1963). The Supreme Court has not said, nor since its decision in *Munsey Trust* has this court held, that the "equitable" right of the surety is superior to the right of the United States to apply retained contract funds in satisfaction of the contractor's debts to the Government.

We hold, therefore, that plaintiff's claim in behalf of the surety is subordinate and inferior to the right of the United States to set off the amount of taxes owed it by the contractor against the contract retainages in the hands of the Government. This holding applies equally whether the claim is based on the theory that the surety is subrogated to the claims of the laborers and materialmen whom it paid, whether it is grounded on the surety's subrogation to the claims of the contractor, or whether it rests on the contention that the surety has an equitable and superior right to the retained funds in the amount needed to reimburse it for payments made to laborers and materialmen.

As a result of what we have said above, defendant's motion to dismiss the petition would, under normal circumstances, be granted. However, in his opposition to defendant's motion to dismiss, plaintiff has argued that, in any event, the Government is not entitled to offset the amount of the penalty assessed against the contractor and that it is not entitled to interest on the assessed taxes beyond January 1962. This alternative claim is not alleged in the petition and the facts necessary to decide the issue are not before the court. However, during oral argument in open court, plaintiff was granted leave to amend its petition to set forth a claim for the disallowance of the penalty and interest. Accordingly, plaintiff shall have 30 days from this date in which to file an amended petition cover-

ing the alternative claim and the case is returned to the trial commissioner for the disposition of the remaining issues, including the amount, if any, which plaintiff is entitled to recover.