In re LANNY JONES WELDING & REPAIR, INC. t/a Lanny Jones Contracting, Debtor.

UNITED STATES FIDELITY AND GUARANTY COMPANY, Plaintiff,

v.

LANNY JONES WELDING AND RE-PAIR, INC. and Internal Revenue Service, Defendants.

Bankruptcy No. 87–02001–RT.

Adv. No. 88–0018–RT.

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

May 12, 1988.

J. Stephen Buis, Taylor, Hazen & Kauffman, Richmond, Va., for United States Fidelity and Guaranty Co.

Pearson Liddell, Jr., Liddell & Liddell, Washington, D.C., for Lanny Jones Welding & Repair, Inc.

Richard F. Stein, Special Assist. U.S. Atty., Richmond, Va., for IRS.

S. David Schiller, Assist. U.S. Atty., Richmond, Va., for FAA.

SUPPLEMENTAL MEMORANDUM OPINION AND ORDER

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

This matter is before the Court on United States Fidelity and Guaranty Company's (USF & G) Complaint to Determine Lien Priority, Relief from Automatic Stay, and Request for Turn–Over of Property. The

Federal Aviation Administration (FAA), which is holding funds which are at issue here, has been dismissed as a party. The parties have entered into a stipulation of facts and submitted briefs in support of their respective positions.

*Findings of Fact*

The facts have been fully stipulated. The Court adopts the parties' stipulation as its findings of fact.

In summary, the facts are as follows:

1. USF & G is a Maryland Corporation authorized to do business in the Commonwealth of Virginia.

2. The debtor (Jones Welding), a contractor, is a debtor-in-possession having filed a bankruptcy petition in this Court pursuant to 11 U.S.C. Chapter 11 on September 30, 1987.

3. On May 13, 1986, Jones Welding, among others, executed a Master Surety Agreement in favor of USF & G which provided conditions under which USF & G would furnish payment and performance bonds for construction contracts entered into by Jones Welding.

4. On or about September 25, 1986, the Small Business Administration (SBA), as prime contractor, entered into a contract with the United States Government (the FAA) for the installation of a wind shear detection system at Byrd International Airport, Richmond, Virginia (contract no. DT FA05–86–R–50353,LLWAS). This contract was in the original amount of $191,583.92, but the contract price was subsequently amended upward to $237,167.20. Jones Welding executed the contract as a subcontractor of the SBA. Though the contract was between the United States Government (the FAA), the SBA as prime contractor, and Jones Welding as the subcontractor of the SBA, payments were to be made directly to Jones Welding by the FAA.

5. On or about October 8, 1986, USF & G executed payment and performance bonds in favor of Jones Welding for the Byrd International Airport wind shear system contract.

6. Jones Welding completed its work on the wind shear system in August, 1987.

7. On March 11, 1987, the Internal Revenue Service (IRS) issued as to Jones Welding a Notice of Federal Tax Lien under Internal Revenue Laws in the amount of $41,601.40. This Notice of Tax Lien was recorded in the Clerk's Office, Hanover Circuit Court, Hanover County, Virginia, on March 16, 1987, and in the Virginia State Corporation Commission on March 16, 1987.

8. On April 2, 1987, the IRS issued as to Jones Welding a Notice of Federal Tax Lien in the amount of $66,470.19. This Notice of Tax Lien was recorded on April 7, 1987, in the Clerk's Office, Hanover Circuit Court, Hanover County, Virginia, and in the Virginia State Corporation Commission on April 8, 1987.

9. On April 22, 1987, the IRS executed a Request for Offset to the SBA as to funds due Jones Welding for its work on the wind shear project.

10. On April 24, 1987, the IRS issued a Notice of Levy to the SBA in the amount of $90,216.78, levying on all property, property rights, money, credits, and bank deposits held by the SBA and belonging to the taxpayer, Jones Welding.

11. Additionally, on April 24, 1987, the IRS issued a Notice of Levy on the Department of Transportation, FAA, as to all property, property rights, money, credits, and bank deposits which the Department of Transportation had in its possession and which belonged to Jones Welding. The Notice of Levy related to 941 taxes owed the IRS by Jones Welding. It is the position of the IRS that the April 24, 1987, Notice of Levy to the FAA constituted a Request for Offset to the FAA.

12. On April 24, 1987, the IRS issued a Notice of Levy to USF & G as to all property, property rights, money, credits, and bank deposits which USF & G had in its possession and which belonged to the debtor, Jones Welding. On May 27, 1987, USF & G wrote to the FAA requesting a status report on the project and levy information and further requesting that no money be paid to Jones Welding without permission of USF & G.

13. On June 16, 1987, the IRS filed a Notice of Federal Tax Lien as to Jones Welding in the amount of $2,579.42 in the

Clerk's Office, Hanover Circuit Court, Hanover County, Virginia, and in the Virginia State Corporation Commission on June 17, 1987.

14. On August 18, 1987, the IRS filed a Notice of Federal Tax Lien in the amount of $87,632.12 in the Clerk's Office, Circuit Court, Hanover County, Virginia.

15. Jones Welding also owes the IRS an additional $60,000.00 in unpaid Federal taxes for which no levy has been issued.

16. At the time of the completion of the project, Jones Welding had not paid its subcontractors or others who performed services or provided materials for it on the wind shear project; the debtor had failed to pay its subcontractors beginning in January 1987.

17. In October 1987, the IRS verbally advised the FAA that Jones Welding had filed a chapter 11 case and that notwithstanding the IRS request for offset, the FAA should continue to hold such funds until the bankruptcy court was requested to lift the automatic stay.

18. In November 1987, the FAA issued to Jones Welding's previous counsel a check in the amount of $86,000.00 for the Byrd International Airport wind shear project. Thereafter, this counsel paid to Jones Welding the sum of $80,000.00 from the FAA receipt. Jones Welding used approximately $40,000.00 of these funds to pay its creditors for work or services performed subsequent to the chapter 11 petition on jobs other than the wind shear project. Of the FAA funds, Jones Welding still holds in its debtor-in-possession account the sum of $30,000.00. Additionally, present counsel for the debtor is holding the sum of $10,500.00. The parties believe Jones Welding's previous counsel is still holding $5,000.00 of the funds.

19. Due to Jones Welding's failure to pay its subcontractors on the Byrd wind shear project, during the month of January 1988, USF & G paid the total amount of $97,594.05 to these subcontractors pursuant to the payment bond previously issued by it. These payments were made subsequent to the FAA release of $86,000.00 to the debtor and the debtor's use of $40,-000.00 of these funds to pay its creditors. Also, these payments were made after consultation with and with the agreement of Jones Welding.

20. The FAA is presently holding additional funds in the approximate amount of $46,000.00 due Jones Welding on the Byrd wind shear project. The FAA is a mere stakeholder as to these funds and has agreed that it will remit them as directed by this Court.

## CONCLUSIONS OF LAW

1. The Court finds the decision in *United States v. Munsey Trust Co.*, 332 U.S. 234, 67 S.Ct. 1599, 91 L.Ed. 2022 (1947) to be controlling of the issue involved in this adversary proceeding.

2. Although USF & G argues that *Pearlman v. Reliance Insurance Co.*, 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962) overrules *Munsey Trust*, this Court follows the logic and reasoning found in *Aetna Insurance Co. v. United States*, 197 Ct.Cl. 713, 456 F.2d 773 (1972) and *Barrett v. United States*, 177 Ct.Cl. 380, 367 F.2d 834 (1966). *Contra, Home Indemnity Co. v. United States*, 313 F.Supp. 212 (W.D.Mo. 1970). In *Aetna* and *Barrett*, the Court of Claims distinguished the *Munsey Trust* and *Pearlman* decisions, observing that the United States was a mere stakeholder in *Pearlman* but was a claimant to funds in its hands in *Munsey Trust*. *Cf., Western Casualty and Surety Co. v. Brooks (In re Bruns Coal Co., Inc.)*, 362 F.2d 486, 492 (4th Cir.1966) (a case in which the Fourth Circuit noted this same factual distinction.).

3. In the case at bar, the United States is not a mere stakeholder. Although the FAA is a stakeholder of the funds in issue, the United States is a claimant to these funds through its agency, the IRS. The funds in issue refer to the approximately $46,000.00 being held by the FAA and the remainder of the $86,000.00 which was mistakenly transmitted by the FAA to the debtor's previous counsel in November 1987. The record reveals that these latter funds consist of (approximately) $5,000.00 held by debtor's previous counsel, $10,-

500.00 being held by Liddell and Liddell, and the $30,000.00 in the debtor-in-possession account.

4. The inadvertent act of the FAA in releasing $86,000.00 of the retained funds to the debtor did not diminish or extinguish the set-off claim of the IRS. *In re Krieger Steel Sections, Inc.*, 103 F.Supp. 351 (E.D. N.Y.1951), *aff'd*, 207 F.2d 83 (2nd Cir.1953), and *In re Ram Industries, Inc.*, 80–1 U.S. Tax Cas. (CCH) ¶ 9406, 1977 WL 1344 (S.D. Ia.1977).

5. This Court holds that under *Munsey Trust* a set-off claim of the United States for taxes against retainages on a government construction contract is superior to the Miller Act payment bond surety's claim of equitable subrogation.

6. The Court does not disagree with USF & G's basic position that it has an equitable subrogation claim to the funds by virtue of its payments to the debtor's subcontractors and material suppliers. This position was of course recognized by the Supreme Court in the *Pearlman* case and in a number of subsequent court decisions. Although it is difficult to reconcile the Supreme Court's rationale in *Pearlman* with its *Munsey Trust* opinion, this Court after careful study has concluded that it must follow the rather broad holding in *Munsey Trust* and allow the United States to assert its set-off rights ahead of the surety's equitable subrogation claim.

IT IS THEREFORE ORDERED that the request of USF & G for turnover of the funds held by the FAA, the debtor and the debtor's present and former counsel is denied.

IT IS FURTHER ORDERED that the United States' set-off rights of the IRS are paramount to USF & G's equitable subrogation claim.

IT IS FURTHER ORDERED that the request of USF & G for relief from the stay and for adequate protection is denied as the issue is mooted by the Court's ruling.